(C. D. 597)

PARFUMS CORDAY, INC. *v.* UNITED STATES

United States Customs Court, First Division

(Decided March 2, 1942)

*Brooks & Brooks* (*Frederick W. Brooks* of counsel) for the plaintiff.

*Paul P. Rao*, Assistant Attorney General (*John J. McDermott*, special attorney), for the defendant.

Before OLIVER and WALKER, Judges

WALKER, Judge: These are suits brought at the port of New York against the United States for the recovery of money claimed to have

been improperly exacted as customs duties on an importation of empty glass bottles from France. Counsel have agreed that the merchandise consists of empty bottles of the character used for containers of perfume, produced otherwise than by automatic machine. The collector of customs assessed duty thereon at the rate of 75 per centum ad valorem under the provision in paragraph 218 (e) of the Tariff Act of 1930 for—

Bottles and jars, wholly or in chief value of glass, of the character used or designed to be used as containers of perfume, talcum powder, toilet water, or other toilet preparations * * * produced by automatic machine, 25 per centum ad valorem; otherwise produced, 75 per centum ad valorem.

The merchandise in each case was entered for warehouse in December, 1937. On February 1, 1938, the duties were paid and a permit of delivery was issued and received by the importer, who, however, did not present the same to the warehouse storekeeper or make any attempt to withdraw the goods from warehouse until September, 1938. In the meantime, on April 16, 1938, the Czechoslovakian Trade Agreement (T. D. 49458) came into force and effect, and by its terms the duty applicable to bottles such as those in issue was reduced to 37½ per centum ad valorem. The said trade agreement was proclaimed by the President on March 15, 1938, and by virtue of section 350 (a) (2) of the Tariff Act of 1930 the proclaimed rates of duty were made applicable to articles imported from certain other countries, including France.

It is claimed in each protest that the merchandise is properly dutiable at only 37½ per centum ad valorem under the provisions of paragraph 218 (e), *supra*, as modified by the Czechoslovakian Trade Agreement—

for the reason that the merchandise was withdrawn from warehouse for consumption on or after April 16, 1938, which was the effective date of the said Trade Agreement.

and it is further contended that—

The payment of duty on February 1, 1938, and the issuance of a delivery permit do not constitute withdrawal from warehouse for consumption. The withdrawal from warehouse for consumption did not take place until the permit was presented to the warehouse store keeper in September, 1938.

In the brief filed in support of the plaintiff's claim our attention is drawn to the letter of the Commissioner of Customs addressed to "Collectors of Customs and Others Concerned:" in connection with the Czechoslovakian Trade Agreement, T. D. 49458, the last paragraph of which reads:

The new rates of duty set forth in schedule II of the trade agreement with Czechoslovakia will apply to articles described in that schedule which are entered for consumption or *withdrawn from warehouse for consumption* on or after April 16, 1938. [Italics added.]

and it is contended that the italicized words require at least that the delivery permit shall have been lodged with the warehouse storekeeper before withdrawal may be said to have taken place.

The provision of the Tariff Act of 1930 under which the bottles in issue were admitted to warehouse reads, so far as pertinent, as follows:

SEC. 557. ENTRY FOR WAREHOUSE—WAREHOUSE PERIOD—DRAWBACK.

Any merchandise subject to duty, with the exception of perishable articles and explosive substances other than firecrackers, may be entered for warehousing and be deposited in a bonded warehouse at the expense and risk of the owner, importer or consignee.   Such merchandise may be withdrawn, at any time within three years (or ten months in the case of grain) from the date of importation, for consumption upon payment of the duties and charges accruing thereon *at the rate of duty imposed by law upon such merchandise at the date of withdrawal;* * * *. [Italics added.]

The question presented for decision, therefore, is whether presentation of the delivery permit to the storekeeper, whether or not coupled with physical withdrawal of the merchandise from warehouse was necessary to determine its dutiable status, or whether the issuance to and receipt by the importer of the delivery permit acted as such a constructive withdrawal as determined the rights of the parties.

In *Stone & Downer et al.* v. *United States,* 19 C. C. P. A. 259, T. D. 45388, certain merchandise had been placed in bonded warehouse during the life of the Tariff Act of 1913, and it remained therein until after the passage of the Tariff Act of 1922, which imposed duties on such class of merchandise.   In connection with the assessment of duties under the provisions of the latter act, the question arose whether the goods had been imported under that act or the act of 1913.   The majority of the court, at page 264, said:

No principle is better settled in this court than the one that goods in bonded warehouses are not to be considered as imported until a permit of delivery has been issued and they enter into the commerce of the country.   A mere citation of but a few of the authorities will suffice: *Casazza & Bro.* v. *United States,* 13 Ct. Cust. Appls. 627, T. D. 41481; *Hartranft* v. *Oliver,* 125 U. S. 525; *Five Per Cent Cases,* 6 Ct. Cust. Appls. 291, T. D. 35508, and cases therein cited.

A careful reading of the authorities cited indicates that physical withdrawal of the goods from warehouse or even presentation of the delivery permit to the storekeeper is not necessary to effect entrance of the goods into the commerce of the country, but that such entrance takes place when control over the goods passes to the importer and nothing remains to be done by the customs officials or employees except to honor the delivery permit and release the goods.   In *Casazza & Bro.* v. *United States, supra,* it was said:

For all dutiable purposes, therefore, it is plain Congress intended goods remaining in bonded warehouse after September 21, 1922, with duties unpaid thereon,

to be subject to the provisions of the Tariff Act of 1922. We have, in such cases, held on many occasions, *that the time of importation must be deemed to be the time of withdrawal for consumption* and that, to this extent at least, the rights and remedies of the parties must be determined by the provisions of the new law. *May Co.* v. *United States*, 12 Ct. Cust. Appls. 266; *Diana* v. *United States*, 12 Ct. Cust. Appls. 290; *Kee Co.* v. *United States*, 13 Ct. Cust. Appls. 105, T. D. 40943. [Italics added.]

In *Hartranft* v. *Oliver, supra,* the Supreme Court said:

There. is manifest justice in the rule that goods thus withheld from the control of the owner or importer shall be subject only to such duties as are leviable by the law *when he is at liberty to take possession of them.* [Italics added.]

In the *Five Per Cent Cases, supra,* the majority of the Court of Customs and Patent Appeals said:

The purpose of tariff laws, generally speaking, is to provide that the dutiable status of imported merchandise is to be determined at the time it enters into the commerce of the country. Clearly, with respect to the class of merchandise now under consideration, that time was when entry for consumption was made and delivery permits issued. *Marriott* v. *Brune* (9 How., 50 U. S., 619), *Fabbri* v. *Murphy* (95 U. S. 191), *Hartranft* v. *Oliver* (125 U. S. 525), *United States* v. *Burr* (159 U. S. 78, 83–84), *American Sugar Co.* v. *United States* (202 U. S. 563), *Franklin Sugar Co.* v. *United States* (202 U. S. 580), *Faber* v. *United States* (221 U. S. 649), *United States* v. *Goodsell* (84 Fed. 439), *Mosle* v. *Bidwell* (130 Fed. 334), *United States* v. *Hartwell* (142 Fed. 334), *American Cigar Co.* v. *United States,* (146 Fed. 484), *Gump* v. *United States* (3 Ct. Cust. Appls. 137, T. D. 32384).

In *Vandegrift & Co.* v. *United States,* 9 Ct. Cust. Appls. 112, T. D. 37978, the question at issue was whether goods which arrived at the port of New York on September 5, 1916, and were forwarded to Philadelphia in bond under an immediate transportation entry made on September 7, the consumption entry being filed on September 8, although the duties were not paid nor was a permit of delivery issued until September 16, were dutiable under the provisions of the Tariff Act of 1913 or under the provisions of the Revenue Act of 1916, which went into effect on the 9th day of September of that year. Paragraph Q of the Tariff Act of 1913 provides as follows:

That on and after the day when this act shall go into effect all goods, wares, and merchandise previously imported, for which no entry has been made, and all goods, wares, and merchandise previously entered without payment of duty and under bond for warehousing, transportation, or any other purpose, for which no permit of delivery to the importer or his agent has been issued, shall be subjected to the duties imposed by this act and to no other duty, upon the entry or the withdrawal thereof * * *.

It was held that since there was no conflict between paragraph Q, *supra,* and the provisions of the Revenue Act of 1916 that paragraph was not repealed by the revenue act and should be read in connection therewith. Hence the principle of paragraph Q was applied to the administration of the revenue act, and the majority of the court concluded that—

Inasmuch as there was no payment of duty nor the issuance and delivery of any permit of delivery until after the 8th day of September, 1916, under the provisions of paragraph Q the importers are not herein entitled to recovery.

In *United States* v. *Cronkhite Co.*, 9 id. 129, T. D. 37980, a somewhat similar situation existed in that goods arrived at Tacoma on July 17, 1916, were shipped in bond under immediate transportation entry to New York where they arrived on September 8, 1916, and were entered that day free of duty under the provisions of the Tariff Act of 1913. The permit of delivery, although dated September 8, 1916, and signed by the deputy collector of customs on that day, was not countersigned by the naval officer, as required by law, until September 9, 1916, and was delivered to the importer on that day. It was held that the merchandise was dutiable under the provisions of the Revenue Act of 1916, which, as hereinbefore mentioned, went into effect on September 9, 1916, and the majority of the court in its decision said:

. There is a long and consistent line of decisions upon this subject, commencing at least with the Tariff Act of 1897. Paragraph 33 of that act was in all essential particulars in the language of paragraph Q of the act of 1913. What constituted an "importation," or rather when could goods be said to have been "imported from a foreign country" and what was necessary to constitute an "entry" under said paragraph 33, have been the subject of frequent adjudication. The board gave consideration to the same on September 7, 1900, in G. A. 4762 (T. D. 22481). Shortly thereafter the same subject received attention in G. A. 4909 (T. D. 22618), decided November 14, 1900. Similar decision was had by the board in G. A. 5004 (T. D. 23317), October 17, 1901, and in G. A. 5870 (T. D. 25860), December 19, 1904. In these various decisions the doctrine was uniformly adhered to that so long as goods remained in the custody and control of the officers of the customs they are to be regarded as in customs custody so as to be affected by any new legislation in relation to the duties that Congress may see fit to adopt. *What constituted such withdrawal from the custody of the customs and introduction into the body of commerce was held to require payment of duties and the due delivery and receipt by an importer of an unconditional permit of delivery.* [Italics added.]

The precise issue before us was passed upon in the case of *Alexander & Baldwin* v. *United States*, T. D. 23317, 4 Treas. Dec. 824, and it was there said by this court, Somerville, J., writing the decision, after an examination of authorities including *Hartranft* v. *Oliver, supra, Sherman* v. *Robertson*, 136 U. S. 570, *Seeberger* v. *Schweyer*, 153 U. S. 609, and *United States* v. *Goodsell*, 84 Fed. 439.

A close scrutiny of the decisions cited above leads us to the conclusion that the issuance to the importer of such a document as would enable him to withdraw his goods without the necessity of making any further application to the customs officers for permits or like papers, is, in legal effect, a constructive delivery of the merchandise, and operates as a completion of the act of importation, as between the Government and the importer, so as to fix and determine the rights of both parties.

There is nothing in the record before us to indicate that any act remained to be done by the customs officials or employees after the issuance of the delivery permit and its receipt by the importer except to honor the same and release the goods. Such custody as they retained, therefore, was merely manual or nominal custody. Control of the goods was in the importer's hands, and they were to all intents and purposes absolutely free from customs control or authority. The situation is comparable to a case where a buyer, having paid for goods and taken title to the same, leaves them in the seller's custody. Any change in the status of the goods is, in the absence of agreement or statute to the contrary, or fault of the seller, at the buyer's risk.

We therefore overrule the protest claim, and judgment will issue accordingly.