(C. D. 1113)

WAITT & BOND, INC. *v.* UNITED STATES

United States Customs Court, Third Division

(Decided June 4, 1948)

*Barnes, Richardson & Colburn* (*J. Bradley Colburn* of counsel) for the plaintiff.
*Paul P. Rao*, Assistant Attorney General (*Dorothy C. Bennett*, special attorney), for the defendant.

Before CLINE, EKWALL, and JOHNSON, Judges

EKWALL, Judge: There is no controversy about the facts in this case, the questions presented being purely questions of law. It was submitted upon an agreed statement of facts. The claim is limited to 70 packages of stemmed filler tobacco imported from Cuba and entered for warehouse on June 26, 1942. It was assessed with duty at the rate of 40 cents per pound under paragraph 601 of the Tariff Act of 1930, as modified by the trade agreements between the United States and Cuba (T. D.'s 47232, 50050, and 50541). Plaintiff claims that the reduced rate of 20 cents per pound is applicable. That rate is limited under the terms of the supplemental Cuban Trade Agreement (T. D. 50541, *supra*), to a maximum quota of 22,000,000 pounds imported from Cuba during any calendar year. The rate of 40 cents per pound assessed by the collector was the rate in effect on August

24, 1934, the date set forth in said trade agreement as applicable to importations from Cuba in excess of the annual quota. In his original liquidation of August 22, 1942, made while the goods were still in warehouse and before duties had been paid or delivery permit issued, the collector, as appears from the record, assessed the tobacco with the reduced rate of 20 cents per pound applicable to the quota for the year 1942. However, that quota became exhausted while the goods still remained in warehouse, prior to the payment of duties or to the issuance of a delivery permit. For the sake of clarity, we set forth chronologically the subsequent events affecting the importation.

On September 15, 1942, importer filed with the collector a warehouse withdrawal for consumption covering these 70 packages of stemmed filler tobacco.

On September 21, 1942, the Commissioner of Customs issued a circular letter to collectors of customs in which they were instructed that during the period from September 24 to December 31, 1942, estimated duties at the rates in effect on August 24, 1934 (i. e., 40 cents per pound), should be deposited on all entries or withdrawals of Cuban filler tobacco, pending determination as to whether the particular entries came within the quota limitations set by paragraph 601, *supra*, as amended.

On September 24, 1942, at 12 noon, eastern war time, the 1942 quota for Cuban filler tobacco (with certain exceptions not here involved) was exhausted. The collector at New York, the port of entry of the tobacco before us, was so notified in a letter dated February 22, 1943.

On September 26, 1942, the importer paid duty on these 70 packages and was issued a delivery permit. Duty was paid thereon at the 20-cent rate.

On October 2, 1942, the collector sent a "Notice of Duties Due" to the importer, demanding an additional amount to equal the 40-cent nonquota rate.

The importer did not comply with this demand for payment of increased duties until March 12, 1943, and on March 15, 1943, he filed the delivery permit, which he had obtained on September 26, 1942, with the warehouse storekeeper and obtained delivery of the 70 packages on that date.

Between October 2, 1942, the date of the demand for increased duties, and March 12, 1943, when the increased duties were paid, the importer requested that the collector cancel the warehouse withdrawal filed or, alternatively, that said importer be permitted to withdraw the said 70 packages under the 1943 quota. In a series of communications between the importer, the collector of customs, and the Com-

missioner of Customs this request was considered and on February 18, 1943, was denied *in toto*.

On March 31, 1943, the collector reliquidated the entry and assessed duty on the 70 packages involved at the nonquota 40-cent per pound rate. From this reliquidation the present protest was filed in which it is claimed that the reliquidation was null and void under the provisions of section 514 of the Tariff Act of 1930, in that it was made more than 60 days after the original liquidation, and, in an amendment to the pleading, the further claim is made that the merchandise is subject to no higher or other rate of duty than that in effect on March 15, 1943, the date of actual withdrawal of the merchandise from warehouse.

The validity of the reliquidation depends upon the interpretation of sections 505, 514, and 557 (as amended by the Customs Administrative Act of 1938) of the Tariff Act of 1930. Different parts of a statute must be considered in *pari materia* and should be construed so as to harmonize and give effect to each of them in order to bring about such a result as was reasonably within the contemplation of the legislature. *Bernier* v. *Bernier*, 147 U. S. 242; *United States* v. *Marsching*, 1 Ct. Cust. Appls. 216, T. D. 31257; *Goat & Sheepskin Import Co.* v. *United States*, 5 Ct. Cust. Appls. 178, T. D. 34254; *Beaver Products Co.* v. *United States*, 17 C. C. P. A. (Customs) 434, T. D. 43878; *Kress* v. *United States*, 22 C. C. P. A. (Customs) 421, T. D. 47423.

Section 505, *supra*, provides that the collector "shall ascertain, fix, and liquidate the rate and amount of duties to be paid * * * as provided by law."

Section 514, *supra*, provides that in the absence of protest, liquidation shall be final and conclusive upon all persons "including the United States and any officer thereof" at the expiration of 60 days after the date of such liquidation.

Section 557, *supra*, of the same act provides that merchandise which has been entered in bonded warehouse may be "withdrawn * * * for consumption" within 3 years after importation "upon payment of the duties * * * accruing thereon at the rate of duty imposed by law * * * at the date of withdrawal."

In the instant case the collector fixed the amount of duty to be paid at the 20-cent per pound rate and liquidated the entry on August 22, 1942, while the goods remained in warehouse. From this liquidation no protest was lodged. Duties were paid on September 26, 1942, and permit of delivery issued. The importer did not deliver said permit to the storekeeper until a time 6 months thereafter. In this situation, were the goods "withdrawn for consumption" on September 26, although still physically in warehouse?

In the early case of *Franklin Sugar Refining Co.* v. *United States*, 202 U. S. 580, it was held that where duties are paid "upon. merchandise and permits issued for its removal which have-been delivered' to the storekeeper, it is withdrawn for consumption and is subject to duties as of that time." In the case of *Parfums Corday* v. *United States*, 8 Cust. Ct. 161, C. D. 597, the court held that lodging of the delivery permit with the storekeeper or physical withdrawal of the goods from warehouse is not necessary to effect entrance of the goods into the commerce of the country, but such entrance takes place when control over the goods passes to the importer and nothing remains to be done by the customs officials.

Under authority of the two last-cited cases the tobacco here involved was "withdrawn from warehouse" on September 26, 1942. At that time the legal rate of duty on this merchandise, i. e., the nonquota rate was 40 cents per pound, the rate fixed by the Cuban Reciprocity Convention of August 24,1934.

It is not clear from the record why reliquidation was not made at the 40-cent per pound rate on September 26, 1942, except that it was due to "inadvertence." On October 2, 1942, the additional amount to equal the 40-cent nonquota rate was demanded from the importer by the collector, which amount was not paid until March 12, 1943. It appears in a letter of February 2, 1943, from the Commissioner of Customs to the collector at New York (exhibit 6), that the merchandise was held in warehouse pending payment of this additional sum. It is not clear to the court why this was done, inasmuch as the delivery permit had been issued on September 26, 1942, and the duties then found by the customs officials to be due had been paid by the importer. It would seem that the warehouse entry bond would have been sufficient security for any additional duties found due. (Art. 318 (a) Customs Regulations of 1937.)

Counsel for the Government contends that if an importer allows his goods to remain in warehouse after receiving a permit of delivery from the collector, he does so at his own risk, and the dutiable status of his merchandise is not altered by such action. This contention is sound.

At the time the delivery permit was issued and the goods "withdrawn from warehouse" the quota for the year 1942 had been filled, although this fact was not definitely ascertainable until some time in 1943. Therefore, the rate applicable to this tobacco on September 26, 1942, was 40 cents per pound under paragraph 601, as modified, by virtue of section 557, *supra*.

In the early case of *Merritt* v. *Cameron*, 137 U. S. 542 at 550, section 2970 of the Revised Statutes was involved, which was a correlative provision to section 557, *supra*. The court construed the provision as follows:

In our opinion that section was intended to provide for cases in which a change in the rate of duty had been made by statute while the merchandise was in the bonded warehouse. *Fabbri* v. *Murphy* 95 U. S. 191; act of March 14, 1866, 14 Stat. 8, c. 17. The first clause of the section means simply that if there has been a change in the rate of duty after the merchandise has been entered in bond, and the withdrawal of the merchandise takes place afterwards, and within one year from the date of the importation, the duties to be paid are such as are fixed by the law in force at the date of the withdrawal. The second clause of section 2970 provides that if the merchandise remain in the bonded warehouse more than one year it may be withdrawn for consumption at any time within three years upon the payment of the duties and charges assessed upon the original entry, and ten per centum in addition. The phrase "duties assessed on the original entry," etc., evidently means the duties on the original entry as finally ascertained and liquidated, within the meaning of those terms, as used in section 2931. In either case, if the statute changing the rate of duties goes into effect after the liquidation of the original entry, a reliquidation must necessarily take place. The two clauses of the section differ in one respect only, viz., in a ten per cent increase of duties, where the merchandise remains in the warehouse more than one year, and is withdrawn within three years from the date of importation. This construction renders the two sections of the statute harmonious.

This case was cited and followed in *United States* v. *Holman, Inc.*, 29 C. C. P. A. (Customs) 3, C. A. D. 164. There, certain goatskins were entered for warehouse and assessed for duty under the Tariff Act of 1922, in effect at the time of entry. Liquidation took place on April 2, 1930, against which timely protest was filed. The goods were withdrawn from warehouse for consumption after the enactment of the Tariff Act of 1930. The entries involved therein were marked "No change, Act of 1930." No notice of liquidation or reliquidation under the act of 1930 was posted in the customhouse at the port of entry. The court held that there having been no posting of the liquidation under the 1930 act, as required by the statute and the regulations thereunder, there had been no legal liquidation under said act against which the importer, if it saw fit to do so, might protest within the time prescribed by section 514, *supra*. It is noted that there the withdrawals took place more than 3 years after the liquidation of April 2, 1930.

From the report of the collector in evidence and the ruling of the Customs Bureau (exhibit 8), it appears that the Government relies upon section 315 of the Tariff Act of 1930 as authority for the reliquidation made by the collector. That section, as amended by the Customs Administrative Act of 1938 (T. D. 49646), insofar as pertinent, is as follows:

> On and after the day when this Act shall go into effect all goods, wares, and merchandise previously imported, for which no entry has been made, and all goods, wares, and merchandise previously entered without payment of duty and under bond for warehousing, transportation, or any other purpose, for which no permit of delivery to the importer or his agent has been issued, shall be subjected to the duties imposed by this Act and to no other duty upon the entry or the withdrawal thereof. * * *

Plaintiff claims this section has no application in the instant case because it "relates only to the effective dates of rates of duty accruing on imported merchandise upon the going out of existence of an old tariff act and the coming into effect of a new tariff act and is effective only under the specific conditions prescribed therein." Plaintiff further contends that the change in rate in the instant case was due to the modification of the Tariff Act of 1930 by the trade agreement with Cuba, which he contends was not a new tariff act. In order to determine the effect to be accorded these contentions, we must examine the statute and the trade agreements.

Paragraph 601 of the Tariff Act of 1930, as originally enacted, imposed a rate of 50 cents per pound on filler tobacco of the kind here involved. Under section 316 of that act, the general 20 per centum preferential reduction in duties granted to Cuban products imported into the United States under the Cuban Reciprocity Treaty of 1902 (T. D. 24836) was continued. Therefore, the applicable rate for such tobacco under the 1930 act, as originally enacted, was 40 cents per pound. That rate remained in effect, without change, from the time of the enactment of said tariff act until September 3, 1934, the effective date of the first trade agreement with Cuba (T. D. 47232), concluded on August 24, 1934, under authority of section 350 of the Tariff Act of 1930, as amended June 12, 1934 (48 Stat. 943). Therefore, the rate of duty "provided by law" on August 24, 1934, on imports of Cuban tobacco of the kind here involved was 40 cents per pound. This is noteworthy inasmuch as subsequent Cuban Trade Agreements provided that certain rates on tobacco in effect on August 24, 1934, should continue.

By the terms of a supplemental Cuban Trade Agreement (T. D. 50050), effective December 23, 1939, paragraph 601 was again modified by imposing a quota of 22,000,000 pounds in any calendar year after 1939, the result of which was to limit the amount of such tobacco entitled to the rate of duty therein provided during the year. Any amount in excess of the quota was made subject to duty as though such tobacco were not enumerated and described in Article II of said supplemental trade agreement, with the proviso, however, that the rates of duty thereon should not exceed those in effect on August 24, 1934, the effective date of the first Cuban Trade Agreement.

In a further supplemental Cuban Trade Agreement, effective January 5, 1942 (T. D. 50541), the same quota provision was continued. This last-named agreement was in effect on September 26, 1942, when the importer received its permit of delivery in the instant case, and when, as above held, the merchandise was "withdrawn from warehouse."

From the above it appears that during the year 1942 the rate of duty on tobacco of this character under paragraph 601 of the Tariff

Act of 1930 was 20 cents per pound up to the time the quota for that year (22,000,000 pounds) was exhausted. Immediately upon the happening of that event, the rate of duty under the Tariff Act of 1930, as modified by law, automatically changed by operation of law to 40 cents per pound. The record before us discloses that the Commissioner of Customs determined that the quota for 1942 became filled at 12 noon, eastern war time, on September 24, 1942. Inasmuch as the permit of delivery in the instant case was issued September 26, 1942, the instant merchandise was in excess of a total quantity of 22,000,000 pounds for the year 1942, and by the express terms of the trade agreement then in force it was

* * * subject to duty as though such articles were not enumerated and described in this Schedule, but the rates of duty thereon shall not exceed those in effect on August 24, 1934. * * *

The rate of duty "in effect on August 24, 1934" was 40 cents per pound, as above set forth. The collector assessed that rate in his reliquidation. Therefore, if such reliquidation is valid, plaintiff's claim for assessment at 20 cents per pound should be overruled.

It appears to the court that the provision in section 514, *supra*, fixing a 60-day limit within which, in the absence of protest, a liquidation becomes final against both the importer and the Government, is easily reconciled with the terms of section 557, *supra*, which requires payment of duty upon merchandise which has remained in warehouse not over 3 years after importation at the rate of duty imposed by law at the date of withdrawal. The collector is presumably familiar with the law. Therefore, in cases such as the present, involving tariff rate quota merchandise, it would seem that duty should be estimated for the purposes of fixing the liability on the bond. This is in accordance with Article 320, Customs Regulations of 1937, in effect at the time this tobacco was entered for warehouse. This would not interfere with the importer's privilege of withdrawing its merchandise, for merchandise may be withdrawn for consumption before liquidation upon payment of the estimated duties. (Article 333, Customs Regulations of 1937.) Liquidation in such cases should be suspended until all such merchandise covered by the entry has been accounted for within the bonded period by withdrawal, abandonment, or destruction, or until the bonded period has expired, if the merchandise has not been so accounted for before that time. Had that procedure been adopted in the instant case the present situation would not have arisen.

However, there is no statutory limitation of time within which the collector must make a new liquidation to enforce a change in the law affecting warehouse goods. In the instant case we hold that by the operation of the quota provision in the supplemental Cuban Trade Agreement, *supra*, there was a change in the law in that there

was a change in the rate of duty affecting this merchandise. Therefore, under section 557, *supra*, the collector is required to reliquidate. It has been held that when a provision of law admits of more than one construction, that one will be adopted which best serves to carry out the purposes of the act. See *Bernier* v. *Bernier*, 147 U. S. 242; and *United States* v. *Invicta Seeland, Inc.*, 25 C. C. P. A. (Customs) 300, T. D. 49397.

Applying that rule to the instant case we read the provisions of section 514 to limit the time within which the collector may reliquidate an entry to 60 days after his last liquidation, except in cases requiring a reliquidation to enforce a change in the rate of duty occurring by operation of law while goods are in bonded warehouse, provided that rate is still in force at the date of withdrawal for consumption. In effect, the courts have so construed the 60-day limitation in said section 514 and corresponding provisions of prior tariff acts. *Merritt* v. *Cameron, supra; United States* v. *Phelps*, 27 Fed. Cas. 521; *Taylor* v. *United States*, 11 Ct. Cust. Appls. 15, T. D. 38636; *Bertrose* v. *United States*, 12 Ct. Cust. Appls. 19, T. D. 39893; *United States* v. *Fensterer*, 12 Ct. Cust. Appls. 410, T. D. 40586; *United States* v. *Peter McQuade*, 16 Ct. Cust. Appls. 334, T. D. 43080; and *United States* v. *Holman, supra.*

If this were not true, under the circumstances of this case the importer would be deprived of its right to protest the reliquidation. In fact, the situation which arose through inadvertence on the part of the customs officials, would have left the importer with no opportunity to litigate the questions involved.

As above set forth, the applicable rate of duty on this tobacco at the time of withdrawal from warehouse was 40 cents per pound under paragraph 601 of the Tariff Act of 1930, as modified. The collector adopted that rate upon reliquidation. In cases involving the quota provisions of the trade agreements, it is easily understandable that a final determination of the exact time upon which the quota for any given commodity became exhausted may not be reached for several months after the happening of the event. While the course above outlined of suspending liquidation would seem to be preferable, we can see no reason for holding a reliquidation made more than 60 days subsequent to the original liquidation illegal, where there has been a change in the rate of duty, as happened here. Provided the reliquidation is made within a reasonable time after the collector shall have been officially informed of the final determination of the date upon which the quota becomes exhausted, as was the case here, such reliquidation is authorized by section 557, *supra.*

In view of the fact that we have held that the goods were "withdrawn from warehouse" on September 26, 1942, we know of no author-

ity for granting relief from the payment of the duty properly assessable on that date, i. e., 40 cents per pound on the basis of the nonquota rate.

For the reasons above given and under authority of the cases cited we overrule plaintiff's claims.

Judgment will be rendered for the defendant.