WAITT & BOND, INC. *v.* UNITED STATES (No. 4609) [1]

---

[1] C. A. D. 421.

64

United States Court of Customs and Patent Appeals, December 12, 1949

*Barnes, Richardson & Colburn* (*J. Bradley Colburn* and *James F. Donnelly* of counsel) for appellant.

*David N. Edelstein,* Assistant Attorney General (*Richard F. Weeks,* special attorney, of counsel), for the United States.

[Oral argument October 6, 1949, by Mr. Colburn and Mr. Weeks]

Before GARRETT, Chief Judge, and JACKSON, O'CONNELL, and JOHNSON, Associate Judges

GARRETT, Chief Judge, delivered the opinion of the court:

Appellant here seeks reversal of the judgment rendered by the Third Division of the United States Customs Court in conformity with its decision, C. D. 1113 (reported in 20 Cust. Ct. 224), overruling the protest of appellant whereby recovery is sought of a portion of the duties assessed and collected by the Collector of Customs at the port of New York upon 70 packages of stemmed filler tobacco imported from Cuba and entered for warehouse June 26, 1942.

We quote the following from the brief on behalf of the Government:

Under the Tariff Act [of 1930], paragraph 601, stemmed filler tobacco is subject to a specific duty of 50 cents per pound. The 20% preferential in favor of Cuban imports fixed this rate at 40 cents per pound. The various trade agreements with Cuba have modified this rate to 20 cents per pound in favor of a maximum quota of 22,000,000 pounds per year. As soon as 22,000,000 pounds of this

tobacco has been imported in any calendar year, the rate returns to 40 cents per pound, which was the rate in effect on August 24, 1934 (T. D. 50050, T. D. 50541).

There is no controversy respecting the facts. The dates constitute an element of primary importance.

The Collector of Customs liquidated the entry on August 22, 1942, at the rate of 20 cents per pound. On that date the Cuban quota for the calendar year 1942 had not been exhausted; so, the rate of 20 cents per pound was the correct rate to be applied.

On September 15, 1942, appellant filed with the collector a warehouse withdrawal for consumption entry which covered the 70 packages involved. On that date the rate properly chargeable was 20 cents per pound.

On September 21, 1942, while appellant's withdrawal entry was pending, the Commissioner of Customs issued Circular Letter No. 2350 in which customs collectors were instructed as follows:

During the period September 24 to December 31, 1942, estimated duties at the rates of duty in effect on August 24, 1934, on such tobacco shall be required to be deposited on all entries or withdrawals for consumption pending determination as to the particular entries coming within the quota. This determination will be made by the Bureau as soon as possible after receipt of completed quota reports from collectors and comptrollers of customs for the period in which the quota is filled.

It was subsequently determined that the quota of tobacco such as that here involved which might be imported from Cuba during the calendar year 1942 at the 20 cents rate was not exhausted until twelve o'clock noon, Eastern War Time, September 24, 1942, and no notice of such determination was issued by the Bureau of Customs until February 22, 1943.

On September 26, 1942, appellant paid the duties which had been assessed upon the 70 packages at the rate of 20 cents per pound in conformity with the collector's liquidation of August 22, 1942, and received delivery permit as sought in the application of September 15, 1942. The permit, however, was not lodged with the customs warehouse storekeeper until March 15, 1943, and so the merchandise remained in the warehouse until the latter date.

In his answer to the protest the collector stated, in substance, that the acceptance of the liquidated duties on September 26 was inadvertent because of the instructions in the commissioner's circular letter of September 21, 1942, *supra*.

On October 2, 1942, demand was made by the collector for the payment or deposit of estimated additional duties in an amount sufficient to meet the 40 cents rate.

On October 7, 1942, appellant requested the Commissioner of Customs to cancel the warehouse consumption withdrawal filed on September 15, 1942. This request was repeated January 5, 1943,

with the alternate request that appellant be permitted to withdraw the tobacco under the 1943 quota, at the rate of 20 cents per pound.

On February 2, 1943, the Commissioner of Customs advised the collector that the request to cancel the warehouse withdrawal entry was denied and that the merchandise was being held in warehouse pending payment of duties at the non-quota rate of 40 cents per pound.

On February 10, 1943, appellant renewed its application made to the Bureau of Customs to permit withdrawal under the 1943 quota, and this was denied on February 18, 1943.

On February 22, 1943, the official notice that the 1942 quota had been exhausted at twelve o'clock noon, Eastern War Time, September 24, 1942, was issued by the Bureau of Customs.

On March 12, 1943, appellant paid duties in an amount sufficient to cover the difference between what had been paid under the liquidation of August 22, 1942, at the rate of 20 cents per pound, and the amount accruing at the non-quota rate of 40 cents per pound, and, on March 15, 1943, filed with the warehouse storekeeper the permit which had been issued September 26, 1942, and removed the tobacco from the warehouse for consumption.

On March 31, 1943, the collector reliquidated the entry and assessed duty at 40 cents per pound, the rate at which appellant had paid. On that date—March 31, 1943—the quota of tobacco which might be imported during the year 1943 at the rate of 20 cents per pound had not been exhausted, the quota not being filled until May 3, 1943.

On May 21, 1943, which was less than sixty days after the date of the collector's reliquidation, appellant filed its protest. Subsequently the protest was amended, and as amended the pertinent phraseology reads:

We claim that by reason of the provisions of Sec. 514, Tariff Act of 1930, the liquidation of August 22, 1942, became final at the expiration of sixty days after the date of such liquidation; that the purported reliquidation of March 31, 1943, is therefore illegal, null and void; and that refund should be made of all duties assessed and collected in excess of those fixed in the liquidation of August 22, 1942.

We further claim that the assessment of duties made herein is illegal and void.

It is further claimed that the merchandise is subject to no higher or other rate of duty than the duty in effect on March 15, 1943, the date of actual withdrawal from warehouse for consumption of the merchandise herein.

The pertinent phraseology of section 514 of the Tariff Act of 1930 reads:

Sec. 514. * * * all decisions of the collector, * * * and his liquidation or reliquidation of any entry, * * * shall, upon the expiration of sixty days after the date of such liquidation, reliquidation, decision, or refusal, be final and conclusive upon all persons (including the United States and any officer thereof), unless the importer, consignee, or agent of the person paying such charge or exaction, or filing such claim for drawback, or seeking such entry or delivery,

shall, within sixty days after, but not before such liquidation, reliquidation, decision, or refusal, as the case may be, as well in cases of merchandise entered in bond as for consumption, file a protest in writing with the collector * * * .

From the recited facts, it appears that on September 15, 1942, the date on which appellant made application for withdrawal permit, the duty rate was 20 cents per pound, but that on September 26, 1942, when appellant paid the duties which had been liquidated at that rate and was issued a withdrawal permit, the tobacco was subject to a duty rate of 40 cents per pound, the Cuban quota entitled to the rate of 20 cents per pound (as long thereafter was ascertained and officially stated) having been exhausted two days before—that is, on September 24, 1942.

It also appears that on March 15, 1943, when the withdrawal permit, issued September 26, 1942, was filed with the warehouse storekeeper, the legal duty rate was 20 cents per pound, because the Cuban quota for the calendar year 1943 had not been exhausted on that date. It further appears that the rate of 20 cents per pound was the rate which normally would have been applied on March 31, 1943, the date of the collector's act of reliquidation, because that would have been in conformity with the provision of section 557 of the 1930 Tariff Act, as amended by the Customs Administrative Act of 1938, reading:

Section 557. Any merchandise subject to duty * * * may be entered for warehousing and be deposited in a bonded warehouse at the expense and risk of the owner, importer, or consignee. Such merchandise may be withdrawn, at any time within three years * * * from the date of importation, for consumption upon payment of the duties and charges accruing thereon at the rate of duty imposed by law upon such merchandise at the date of withdrawal; * * * .

Actually, however, the reliquidation was made at the rate of 40 cents per pound.

From the report of the collector filed in answer to the protest, it appears that the authority relied upon for reliquidation at the 40 cents rate was section 315 of the Tariff Act of 1930 as amended by the Customs Administrative Act of 1938 (T. D. 49646), the pertinent phraseology of which reads:

Sec. 315. On and after the day when this Act shall go into effect all goods, wares, and merchandise previously imported, for which no entry has been made, and all goods, wares, and merchandise previously entered without payment of duty and under bond for warehousing, transportation, or any other purpose, for which *no permit of delivery to the importer or his agent has been issued*, shall be subjected to the duties imposed by this Act and to no other duty upon the entry or the withdrawal thereof; * * *. [Italics ours.]

Specifically, the Government's position, as we understand it, was and is that, as a matter of law, the merchandise must be considered as having been withdrawn for consumption on September 26, 1942, when the permit for delivery was inadvertently issued.

Hereinbefore it has been recited that the rate of 40 cents per pound at which the collector reliquidated was the rate which was in effect on August 24, 1934. This was more than seven years prior to January 5, 1942, the effective date of the supplemental trade agreement (T. D. 50541) between the United States and Cuba here involved.

Also, it has been recited that the 40 cents rate was applied in conformity with instructions embraced in a circular letter of the Commissioner of Customs addressed to collectors of customs under date of September 21, 1942.

It is not intended to make, or imply, any criticism of either the commissioner's act in issuing the letter of instructions or of the acts of the collector in attempting to conform therewith.

In considering the questions here involved, however, we may not disregard the fact that the rate legally applicable to the merchandise up to twelve o'clock noon, Eastern War Time, September 24, 1942, was 20 cents per pound—not the 40 cents rate of August 24, 1934.

Further, we deem it not improper to suggest that if the permit of September 26, 1942, had not been issued (nor any other permit issued during the remainder of the calendar year 1942) the legal rate of duty on the tobacco (which had remained in warehouse) at the time of its actual physical withdrawal in March 1943, and at the time of the collector's reliquidation on March 31, 1943, would have been 20 cents per pound because of the provision in section 557, *supra*, for assessment of "duties and charges accruing thereon at the rate of duty imposed by law * * * *at the date of withdrawal*." (Italics ours)

So, obviously the applicability, or meaning, of the clause in section 315, *supra*, reading, "for which no permit of delivery to the importer or his agent has been issued," must be determined.

Before discussing that particular phase of the controversy, we quote the following from the decision of the trial court:

* * * The rate of duty "in effect on August 24, 1934" was 40 cents per pound, as above set forth. The collector assessed that rate in his reliquidation. Therefore, if such reliquidation is valid, plaintiff's claim for assessment at 20 cents per pound should be overruled.

It appears to the court that the provision in section 514, *supra*, fixing a 60-day limit within which, in the absence of protest, a liquidation becomes final against both the importer and the Government, is easily reconciled with the terms of section 557, *supra*, which requires payment of duty upon merchandise which has remained in warehouse not over 3 years after importation at the rate of duty imposed by law at the date of withdrawal. The collector is presumably familiar with the law. Therefore, in cases such as the present, involving tariff rate quota merchandise, it would seem that duty should be estimated for the purposes of fixing the liability on the bond. This is in accordance with Article 320, Customs Regulations of 1937, in effect at the time this tobacco was entered for warehouse. This would not interfere with the importer's privilege of withdrawing its merchandise, for merchandise may be withdrawn for consumption before liquidation upon payment of the estimated duties. (Article 333, Customs Regulations of

1937.) Liquidation in such cases should be suspended until all such merchandise covered by the entry has been accounted for within the bonded period by withdrawal, abandonment, or destruction, or until the bonded period has expired, if the merchandise has not been so accounted for before that time. Had that procedure been adopted in the instant case the present situation would not have arisen.

However, there is no statutory limitation of time within which the collector must make a new liquidation to enforce a change in the law affecting warehouse goods. In the instant case we hold that by the operation of the quota provision in the supplemental Cuban Trade Agreement, *supra*, there was a change in the law in that there was a change in the rate of duty affecting this merchandise. Therefore, under section 557, *supra*, the collector is required to reliquidate. It has been held that when a provision of law admits of more than one construction, that one will be adopted which best serves to carry out the purposes of the act. See *Bernier* v. *Bernier*, 147 U. S. 242; and *United States* v. *Invicta Seeland, Inc.*, 25 C. C. P. A. (Customs) 300, T. D. 49397.

Applying that rule to the instant case we read the provisions of section 514 to limit the time within which the collector may reliquidate an entry to 60 days after his last liquidation, except in cases requiring a reliquidation to enforce a change in the rate of duty occurring by operation of law while goods are in bonded warehouse, provided that rate is still in force at the date of withdrawal for consumption. In effect the courts have so construed the 60-day limitation in said section 514 and corresponding provisions of prior tariff acts.

With much of the foregoing we are in agreement, but we are unable to agree that the reliquidation of March 31, 1943, at the duty rate of 40 cents per pound was valid. That was not the rate applicable on that date.

The withdrawal permit issued September 26, 1942, was issued inadvertently. If it be conceded that the Government was not bound by it, how may it properly be held that appellant was bound by it? In our opinion, a permit, although designated as a withdrawal permit which does not in fact permit withdrawal without the importer doing something more than had been done up to the time of the issuance of the permit, is not a permit of the character contemplated by the Congress in its use in section 315, *supra*, of the phraseology, "for which no permit of delivery to the importer or his agent has been issued."

In reference to this phase of the controversy, the trial court said:

In the instant case the collector fixed the amount of duty to be paid at the 20-cent per pound rate and liquidated the entry on August 22, 1942, while the goods remained in warehouse. From this liquidation no protest was lodged. Duties were paid on September 26, 1942, and permit of delivery issued. The importer did not deliver said permit to the storekeeper until a time 6 months thereafter. In this situation, were the goods "withdrawn for consumption" on September 26, although still physically in warehouse?

In the early case of *Franklin Sugar Refining Co.* v. *United States*, 202 U. S. 580, it was held that where duties are paid "upon merchandise and permits issued for its removal which have been delivered to the storekeeper, it is withdrawn for consumption and is subject to duties as of that time." In the case of *Parfums Corday* v. *United States*, 8 Cust. Ct. 161 C. D. 597, the court held that lodging

of the delivery permit with the storekeeper or physical withdrawal of the goods from warehouse is not necessary to effect entrance of the goods into the commerce of the country, but such entrance takes place when control over the goods passes to the importer and nothing remains to be done by the customs officials.

Under authority of the two last-cited cases the tobacco here involved was "withdrawn from warehouse" on September 26, 1942. At that time the legal rate of duty on this merchandise, i. e., the nonquota rate was 40 cents per pound, the rate fixed by the Cuban Reciprocity Convention of August 24, 1934.

The *Franklin Sugar Refining Co.* case, *supra*, cited by the trial court involved a question of drawback—a question not involved here. In the course of its decision, however, the Supreme Court said:

* * * We think, therefore, that where duties are paid upon merchandise and permits issued for its removal *which have been delivered to the storekeeper*, it is withdrawn for consumption and is subject to duties as of that time. [Italics ours.]

In the instant case appellant did not deliver the permit to the storekeeper.

In the *Parfums Corday* case, *supra*, after a review of the facts there appearing and the authorities which had been cited, the trial court said:

There is nothing in the record before us to indicate *that any act remained to be done by the customs officials or employees after the issuance of the delivery permit and its receipt by the importer except to honor the same and release the goods.* [Italics ours.]

Obviously, in this case there did remain something to be done by the customs officials before appellant could get its goods. At least, the customs authorities so construed it, and appellant could not obtain its goods under the permit issued to it September 26, 1942.

So, neither the *Franklin Sugar Refining Co.* case, *supra*, nor the *Parfums Corday* case, *supra*, is deemed to be controlling here.

In their brief and argument before us counsel for the Government have cited several decisions holding that where merchandise is in a warehouse at a time when there is a change in law the merchandise shall be assessed for tax at the rate in effect at the time of its withdrawal. That is elementary law, and the cases in its support need not be discussed here. The rule as applied under the facts of those cases is not deemed to be applicable here because the facts here are different from the facts in those cases.

The judgment of the United States Customs Court is *reversed* and the case *remanded* for further proceedings not inconsistent with this decision.

By reason of illness, HATFIELD, J., was not present at the argument of this case and did not participate in the decision.