(C. D. 168)

ILLINOIS CENTRAL RAILROAD CO. v. UNITED STATES

United States Customs Court, Third Division

(Decided June 1, 1939)

*Murray F. Cleveland* for the plaintiff.

*Charles D. Lawrence*, Acting Assistant Attorney General (*Samuel D. Spector*, special attorney), for the defendant.

Before CLINE, EVANS, and KEEFE, Judges

EVANS, Judge: This is an action against the United States in which the plaintiff seeks to recover money paid as customs duties upon an importation of pineapples from Cuba. The only evidence in the case, aside from such of the official papers as are admissible, is an agreement of counsel, which is headed "Stipulation of Facts Agreed Upon By

Counsel for the United States of America and for the Illinois Central Railroad Company." This so-called stipulation, which is undated and unsigned, was admitted in evidence at the trial. It is in the following language:

On May 4, 1935, a representative of the Illinois Central Railroad Company took out a consumption entry on 1321 crates of pineapples due to arrive from Havana, Cuba, on May 6, 1935 for the account of A. Serra & Company, Chicago, Illinois; and a duty amounting to 20¢ per crate or $264.20 was paid by the Illinois Central Railroad Company and received by the United States of America on May 4, 1935.

On May 6, 1935, these pineapples were received in New Orleans, Louisiana. On the same day, 500 of the 1321 crates were loaded into two cars of the Illinois Central Railroad Company destined for points in Canada. These two cars moved directly from New Orleans to Canada where the said 500 crates of pineapples were received by the Canadian consignees; and the Canadian duties were paid by them. This shipment traveled in ordinary commerce and did not move "in bond."

On the morning of May 6, 1935, a representative of the Illinois Central Railroad made a request upon the Government representative in charge of the Entry Division, in New Orleans, for permission to void the Consumption Entry insofar as the 500 crates of pineapples were concerned, and to substitute a Transportation and Exportation entry. This request was refused; and at the time of such request and refusal the pineapples in question were still on the wharf and in customs custody.

From this agreement of counsel as to the facts it would seem that, the goods being in customs custody when the request was made to substitute a transportation and exportation entry for the consumption entry as to a portion of the pineapples, such request should have been granted. However, the stipulation also states that the goods traveled in ordinary commerce and not in bond.

Section 558 of the Tariff Act of 1930 forbids refund after goods have been released from the custody or control of the Government. We quote the section as follows:

Sec. 558. * * * No remission, abatement, refund, or drawback of estimated or liquidated duty shall be allowed on the exportation of any merchandise after its release from the custody or control of the Government except in case of the exportation of articles manufactured or produced in whole or in part from imported materials, or not conforming to sample or specifications, on which a drawback of duties is expressly provided for by law.

The imported merchandise had been released from customs custody and traveled to Canada not under bond. Therefore the prohibition in the statute would apply and this court could not order a refund of the duty. In this connection plaintiff cites the case of *Hartman* v. *United States*, T. D. 47200, in support of its claim that duty should be refunded. This case is distinguishable from the case at bar. There the goods were under bond, being model gowns, entered under section 308 of the Tariff Act of 1930. The court found that the gowns had been at all times in the technical possession of the Government, having

been corded and sealed and subject to inspection by customs agents as required by the customs regulations, and that, therefore, they had never been actually released from customs custody and that the prohibition in the statute against refund of duties had no application.

The "application for special permit and permit to land immediately and deliver perishable articles, theatrical effects," etc. (Form 3461), attached to the entry is dated May 4, 1935. A portion thereof recites:

Permission is hereby given to land and deliver the articles above described, not exceeding the quantities noted, after due examination and appraisement have been made.

The consumption entry is dated May 4, 1935. The inspector's return on said application states:

Articles landed and delivered above, * * * Consumption Entry permit No. _____ Received 5–6–1935.

Whether or not this is a part of the record in the case, the Government brief states:

* * * by reason of the perishable character of the merchandise, he [the importer] obtained an immediate delivery order and a special permit to land the merchandise immediately upon arrival. * * *

And further:

* * * The merchandise was technically in customs custody because it was on the wharf, and not as yet removed therefrom: * * *

It appears from the above that a delivery permit was given to the importer and that while the pineapples were in the manual custody of the Government they were legally withdrawn for consumption. Therefore we think the rule laid down in the case of *Franklin Sugar Refining Co.* v. *United States*, 202 U. S. 580, 50 L. ed. 1153, that the Government had no legal custody of the goods thereafter, is applicable here, and that having been released to the importer they were subject to duty. That case related to sugar entered for warehouse. We quote from the decision cited as follows:

Between September 29 and October 10 withdrawal entries were made of the entire cargo and duties at regular rates paid thereon. The delivery permits were lodged with the storekeeper at the same time. This put the sugars at the absolute disposition of the importers. It may be that the government had the custody of them, or rather the joint custody with the importer. Rev. Stat. sec. 2960, U. S. Comp. Stat. 1901, p. 1945. But it was a mere manual custody, not claiming any right over them or right to detain them. Indeed, it may be said that the payment of duties and the delivery of the permit to the storekeeper operated to give up the custody which the government had jointly with the importer before the payment of duties. * * * We think, therefore, that where duties are paid upon merchandise and permits issued for its removal which have been delivered to the storekeeper, it is withdrawn for consumption, and is subject to duties as of that time.

Under the rule above enunciated the pineapples were not in continuous customs custody and therefore article 337 (*b*) of the Customs Regulations of 1931 allowing exportation with refund of estimated duties paid, has no application. We do not consider the cases cited in plaintiff's brief controlling of the issue here involved.

For the foregoing reasons we overrule plaintiff's claim. Judgment will be rendered accordingly. It is so ordered.