(C. D. 1038)

Hudson Shipping Co., Inc. v. United States

United States Customs Court, Third Division

(Decided January 9, 1947)

*Myron A. Maged* for the plaintiff.

*Paul P. Rao,* Assistant Attorney General (*Dorothy C. Bennett* and *Joseph F. Donohue,* special attorneys), for the defendant.

Before Cline, Keefe, and Ekwall, Judges

Ekwall, Judge: Plaintiff in this case claims a refund of duties on certain empty bags imported from Mexico, and entered for warehouse at New York. Refund is asked on the ground that the bags were exported to Spain. It appears that these bags were intended to be used as containers of beans which were to be shipped from Mexico to the United States and thence exported to Spain. They were shipped to Mexico but arrived too late to be used in packaging the beans and were therefore shipped back to New York on the same steamer with the beans. Entry was made for the bags under warehouse entry No. 11872, and an application was made by the importing firm to manipulate them. This manipulation was to consist of transferring the beans, which were also entered for warehouse, from the temporary containers in which they arrived in this country to the bags in question, so that the beans might be exported to Spain in proper containers. The request to manipulate was denied for the reason that the warehouse in which the merchandise was stored was not a manipulating warehouse.

Subsequently the importing firm filed four warehouse withdrawals for consumption to cover all of the bags and duty was paid thereon. Delivery permits were duly issued and lodged with the storekeeper, but the bags were not removed from the warehouse but were used to repackage part of the shipment of beans covered by warehouse entry No. 11559. The beans were thereafter withdrawn under warehouse withdrawal for transportation and exportation, and exported under customs supervision.

It is claimed by the plaintiff that as the bags were not removed from the warehouse they remained in continuous customs custody until exported, and that the duty paid should, therefore, be refunded.

Testimony was introduced on behalf of the plaintiff in support of the facts above set forth. In view of the applicable statutory provisions and of the regulations promulgated thereunder, we deem it unnecessary to discuss the evidence. There is no dispute but that delivery permits were issued upon the four withdrawals for consumption of the bags and that duty was paid thereon. Section 558 of the

Tariff Act of 1930, as amended by the Customs Administrative Act of 1938, provides as follows:

**SEC. 558. NO REMISSION OR REFUND AFTER RELEASE OF MERCHANDISE.**

(a) No remission, abatement, refund, or drawback of estimated or liquidated duty shall be allowed because of the exportation or destruction of any merchandise after its release from the custody of the Government, except in the following cases:

(1) When articles are exported with respect to which a drawback of duties is expressly provided for by law;

(2) When prohibited articles have been regularly entered in good faith and are subsequently exported or destroyed pursuant to a law of the United States and under such regulations as the Secretary of the Treasury may prescribe; and

(3) When articles entered under bond, under any provision of law, are destroyed within the bonded period as provided for in section 557 of this Act, or are destroyed within the bonded period by death, accidental fire, or other casualty, and proof of such destruction is furnished which shall be satisfactory to the Secretary of the Treasury, in which case any accrued duties shall be remitted or refunded and any condition in the bond that the articles shall be exported shall be deemed to have been satisfied.

(b) When articles are exported or destroyed under customs supervision after once having been released from customs custody, as provided for in subsection (c) of section 304 of this Act, such exportation or destruction shall not exempt such articles from the payment of duties other than the marking duty provided for in such subsection (c).

The evidence discloses that the collector of customs waived marking duties on the bags in question. This was in accordance with subsection (b) above set forth.

Article 331 of the Customs Regulations of 1937, in effect at the time of these withdrawals, provides that upon the lodging of the duty-paid permit with the storekeeper, he shall release the goods to or upon the order of the proprietor of the warehouse, in accordance with article 933 (a) and (b) of the regulations, unless the person making the withdrawal requests by endorsement on the permit that release be withheld. Further, it provides that the storekeeper shall note the date of the release on all permits and orders and shall obtain the acknowledgment of such release from the proprietor in the space provided for on the forms.

It is provided in article 1079 (e) of the Customs Regulations of 1937 that:

(e) In the case of merchandise entered for warehouse, customs custody ceases when the storekeeper with whom a delivery permit has been lodged has released the merchandise to or upon the order of the proprietor of the warehouse, as provided in articles 331 and 933 (a) and (b).

In view of the testimony of the president of the importing firm that he had filed warehouse withdrawals for consumption covering all of the bags on this entry, as shown by the withdrawals and the delivery

permits which are a part of the official papers in this case; that in each instance he paid duties on the date of withdrawal for consumption as shown by the cashier's receipt perforations on said customs forms; and that he had lodged the delivery permits with the Government storekeeper at the warehouse after he paid the duties, and had obtained release of the bags from customs custody, it is clear that any refund of duties herein is expressly forbidden by the terms of section 558 (b), as amended, above quoted. It is also clear that the action of the collector in waiving marking duties only on these bags is expressly authorized by said section 558 (b).

In the case of *Franklin Sugar Refining Company* v. *United States*, 202 U. S. 580, 50 L. ed. 1153, the Supreme Court held that the payment of duties and delivery of the permit to the Government storekeeper operated to release the merchandise from customs custody. We quote the language of the court as follows:

\* \* \* And our inquiry then must be, when were the sugars in controversy withdrawn for consumption? \* \* \*

Between September 29 and October 10 withdrawal entries were made of the entire cargo and duties at regular rates paid thereon. The delivery permits were lodged with the storekeeper at the same time. This put the sugars at the absolute disposition of the importers. It may be that the government had the custody of them, or rather the joint custody with the importer. Rev. Stat. § 2960, U. S. Comp. Stat. 1901, p. 1945. But it was a mere manual custody, not claiming any right over them or right to detain them. Indeed, it may be said that the payment of duties and the delivery of the permit to the storekeeper operated to give up the custody which the government had jointly with the importer before the payment of duties. \* \* \* We think, therefore, that where duties are paid upon merchandise and permits issued for its removal which have been delivered to the storekeeper, it is withdrawn for consumption, and is subject to duties as of that time.

So also in the case of *Belgam Corp. et al.* v. *United States*, 67 Treas. Dec. 45, T. D. 47462, the court held that as the record disclosed that the merchandise covered by one of the entries involved had been transferred from the custody of the Government storekeeper to that of the warehouse proprietor, the goods had not been in continuous customs custody, and refund of the duty was prohibited under section 558 of the Tariff Act of 1922, the predecessor paragraph to paragraph 558 here involved.

The same principle was applied in the case of *American Shipping Co.* v. *United States*, 65 Treas. Dec. 178, T. D. 46879, which involved a carload of tomatoes entered at Nogales, Ariz., for transportation and exportation, the ultimate destination named in the entry being Montreal. The car was consigned to the collector of customs at Detroit. Said car was diverted at Chicago at the request of the shippers, its contents inspected, a consumption entry made, a delivery permit issued, and the goods released to the entrant. Subsequently, through error the car was sent to Canada. The importer filed suit to recover

the duties which had been paid on the tomatoes. The court held that when the consumption entry was made at Chicago and the delivery permit issued, possession and control of the merchandise passed from the Government to the importer; that what disposition said importer made of its goods was no concern of the Government, and that the duties could not be refunded.

So also in the case of *Illinois Central Railroad Co.* v. *United States*, 2 Cust. Ct. 422, C. D. 168, it was held that certain pineapples had not been in continuous customs custody and therefore refund of estimated duties paid was disallowed. That case involved an importation of pineapples from Cuba which were entered for consumption and duty paid prior to the arrival of the importing vessel. When the vessel did arrive, a portion of the pineapples was loaded into cars and shipped to Canada (not under bond) and Canadian duties paid thereon. The collector of customs at the port of entry in the United States assessed duty upon the entire quantity entered for consumption and refused to permit the consumption entry to be voided as to the pineapples which had been shipped to Canada, and the substitution of a transportation and exportation entry therefor. The court upheld the collector's action on the ground that a delivery permit had been given to the importer and while the pineapples were in the manual custody of the Government, they were legally withdrawn for consumption, and had not been in continuous customs custody as that term has been interpreted by the courts, citing the *Franklin Sugar Refining Co.* case, *supra*.

Our appellate court applied the same rule in *United States* v. *Maine Central Railway Co.*, 9 Ct. Cust. Appls. 192, T. D. 38015, which involved a shipment of potatoes from Canada destined for Cuba which arrived at a port in Maine for transportation under bond, and, through error on the part of the agent of the shipper at the port of entrance into the United States, was entered for consumption, duties paid, and carried to Boston. The payment of duty was protested on the ground that the goods were intended for export to Cuba and through error had been entered for consumption instead of for transportation and exportation. The court of appeals in denying refund said:

After goods have been entered for consumption, have paid duty, and have constructively at least entered into the commerce of the country their subsequent exportation does not entitle the importer to a repayment of duties. To hold otherwise, we think, would violate both the spirit and the letter of the law, to say nothing of the Treasury regulations which are designed to protect the revenue. * * *

The evidence discloses that the importer failed to file withdrawals for exportation in connection with these bags. Had that action been taken they would have remained in bond under customs custody until exported and no duties would have accrued thereon.

Under authority of the cases cited we find and so hold that section 558 (b), *supra*, prohibits refund of regular duties paid on the ·5,000 empty bags involved herein. Plaintiff's claim is therefore overruled. Judgment for defendant.