No. 54347.—Khosrovschahi & Co. *v.* United States, protests 144655–K (A) and 144655–K (B) (New York).

EKWALL, Judge: Two protests are involved here directed against the imposition of duty upon merchandise covered by the same entries. The commodity imported consisted of washed camel's hair carpet wool imported from Iran. At the trial of the case counsel for the Government moved to dismiss protest No. 144655–K (A) as premature under section 514 of the Tariff Act of 1930. Ruling on the motion was reserved. In his brief counsel for the plaintiff states that inasmuch as the issue is the same in each protest, no objection is made to the motion to dismiss said protest. The motion is therefore granted.

As to protest No. 144655–K (B), the merchandise was entered under paragraph 1101 (a) of the Tariff Act of 1930 (19 U. S. C. § 1001, par. 1101 (a)). The paragraph in question provides free entry under bond for such wool, conditioned upon its use in the manufacture of articles such as carpets, etc., enumerated in the paragraph; if not so used, the duties provided in the paragraph would be payable, together with certain penalties.

The letter of transmittal, forwarded to the court by the collector, relates all of the facts, which are not disputed. We quote the same as follows:

This protest is lodged against the Collector's action in liquidating for duty certain Camels Hair Wool that was imported to be used in the manufacture of floor coverings and other articles. Entries were made on customs Form 7501 Free Consumption Entry under a Wool Bond.

In this instance the importer's general term bond was used. No duty or estimated deposit of duty was taken at time of entry because of the importer's intention to use the merchandise in the manufacture of certain specified articles. The merchandise was delivered to the importer without the payment of estimated duties because of his posting of the carpet wool bond. The merchandise was taken out of customs custody by reason of this delivery and was kept by and for the account of the importer in some storage place but not in a U. S. Customs bonded warehouse.

After a certain lapse of time, the importer did export the merchandise herein, but it was not done under Customs Supervision.

The terms and conditions of the bond not having been complied with, the Collector at New York, under the date of July 25, 1946, wrote to the Bureau of Customs for instructions relative to the assessment of duty and also penalty on the bond. Under date of September 3, 1946, the Bureau replied, advising the Collector to proceed with a demand for liquidated damages for failure to comply with the terms of the bond and duties should be assessed on the merchandise in accordance with Sec. 10.91 (a) of Customs Regulations 1943.

Under date of September 17, 1946, the importer was notified that, as he had not complied with the terms of his bond, full duty and the penalty under the bond had now become due and the duty and penalty were demanded from the importer   Importer was notified also that under Sec. 623 of the Act he could

file a petition for relief under the penalty for failure to comply with the terms of the bond.

Under date of November 4, 1946, the importer did request the Bureau to grant relief from liquidated damages under his term bond, and also asked for relief from the payment of duty on the merchandise.

Under date of March 21, 1947, the Bureau granted the importer's petition for remission of the penalty on his bond, but refused to grant any relief from the payment of duties, stating the Bureau was not authorized to grant any relief from duty because of importer's failure to comply with the terms of the bond and the Customs Regulations of 1943.

  &ast;   &ast;   &ast;   &ast;   &ast;   &ast;   &ast;

Paragraph 1101, *supra* (as amended by sec. 33 (a), Customs Administrative Act of 1938), is in the following language:

(a) Wools: Donskoi, Smyrna, Cordova, * * *; and hair of the camel; all the foregoing, in the grease or washed, 24 cents per pound of clean content; * * * *Provided*, That a tolerance of not more than 10 per centum of wools not finer than 44s may be allowed in each bale or package of wools imported as not finer than 40s.

(b) Any of the foregoing [wool and hair of the camel] may be entered or withdrawn from warehouse without the payment of duty by a manufacturer, processor, or dealer upon the filing of a bond to insure that any wool or hair entered or withdrawn thereunder shall be used only in the manufacture of press cloth, camel's hair belting, knit or felt boots, heavy fulled lumbermen's socks, rugs, carpets, or any other floor coverings. A manufacturer, processor, or dealer may be relieved of liability under his bond with respect to any wool or hair so entered or withdrawn which is transferred in its imported or any other form to another manufacturer, processor, or dealer who has filed a bond to insure that the merchandise so transferred shall be used only in the manufacture of the above-enumerated articles. If any wool or hair so entered, withdrawn, or transferred under bond is used or transferred for use in its imported or any other form in any manner otherwise than in the manufacture of the articles enumerated above, there shall be levied, collected, and paid on the merchandise so used or transferred in violation of the bond the regular duties which would apply to such merchandise if imported in its condition at the time of such use or transfer. Such duties shall be paid by the manufacturer, processor, or dealer whose bond is charged with the wool or hair at the time of such use or transfer; but such duties shall not be levied or collected on any merchandise (except white soft wastes, white threads and noils, which shall be dutiable at seven-eighths of such regular duties when used or transferred for use otherwise than in the manufacture of the enumerated articles) resulting in the usual course of manufacture of such enumerated manufactured articles which cannot be used (with or without further preparation) in the usual course of the manufacture of such enumerated articles, or which is exported or destroyed. When any wool or hair which has been entered or withdrawn under bond as provided for in this subparagraph is used or transferred for use, in its imported or any other form, otherwise than in the manufacture of the above-enumerated articles and prior to such use or transfer there shall have been combined or mixed with such wool or hair any other merchandise, the whole or the combination or mixture shall be presumed to be composed of wool or hair entered or withdrawn under bond, as provided for in this subparagraph, unless the manufacturer, processor, or dealer liable for the payment of the duties shall establish the quantity of bonded wool or hair in such combination or mixture. Every manufacturer, processor, or dealer who has given a bond pursuant to the provisions of this subparagraph shall report any use or transfer of merchandise in violation of the terms of his bond, within thirty days after such use or transfer, to the collector of customs in whose district the bond is filed; and for failure to so report, such manufacturer, processor, or dealer shall be liable to a penalty equal to the value of the merchandise so used or transferred at the time and place of such use or transfer. Such penalty shall be in addition to the duties above provided for. The Secretary of the Treasury is authorized to prescribe such regulations and the form, conditions, and amounts of such bonds as may be necessary to carry into effect the provisions of this subparagraph.

Section 558 of the Tariff Act of 1930, as amended by the Customs Administrative Act of 1938, prohibiting refunds except under certain conditions, is in the following language:

NO REMISSION OR REFUND AFTER RELEASE OF MERCHANDISE.

(a) No remission, abatement, refund, or drawback of estimated or liquidated duty shall be allowed because of the exportation or destruction of any merchandise after its release from the custody of the Government, except in the following cases:

(1) When articles are exported with respect to which a drawback of duties is expressly provided for by law;

(2) When prohibited articles have been regularly entered in good faith and are subsequently exported or destroyed pursuant to a law of the United States and under such regulations as the Secretary of the Treasury may prescribe; and

(3) When articles entered under bond, under any provision of law, are destroyed within the bonded period as provided for in section 557 of this Act, or are destroyed within the bonded period by death, accidental fire, or other casualty, and proof of such destruction is furnished which shall be satisfactory to the Secretary of the Treasury, in which case any accrued duties shall be remitted or refunded and any condition in the bond that the articles shall be exported shall be deemed to have been satisfied.

(b) When articles are exported or destroyed under customs supervision after once having been released from customs custody, as provided for in subsection (c) of section 304 of this Act, such exportation or destruction shall not exempt such articles from the payment of duties other than the marking duty provided for in such subsection (c).

At the hearing counsel for the Government introduced into evidence and there was received as collective exhibit 1 a photostatic copy of importer's bond. Under the provisions of paragraph 10 thereof, the merchandise here involved was released from Government custody and delivered to the importer, conditionally free of duty, dependent upon the use to which the same would be put. The conditions of the bond are such that in case such provisions as to the use should be violated the principal "shall pay all penalties which are required by the said paragraph 1101, as amended, to be collected if the said principal fail to report such use or transfer within the thirty-day period specified in the said paragraph 1101, as amended, in the manner prescribed in the regulations thereunder; * * *."

The record discloses that the wool, after having been delivered to the importer, was placed in its warehouse, which was not a bonded warehouse, and thence exported by said importer from the premises where it had been stored. Said exportation was not made under customs supervision. Therefore, there was no compliance with the Customs Regulations (Article 10.97, Customs Regulations of 1943). Said regulations, insofar as pertinent, provide as follows:

**10.97 Duties, exportation or destruction.**—(a) All wool or hair in its imported form used or transferred for use otherwise than in the manufacture of the enumerated articles shall be assessed with duty in accordance with paragraph 1101 (b), Tariff Act of 1930, as amended. * * *

Because exportation was made without customs supervision, the customs officials demanded the full amount of the duty and the penalty under the bond. The importer applied to the Secretary of the Treasury for remission of the penalty on its bond. The Secretary granted the petition for remission of the penalty, but refused to grant relief from the payment of duties. It is plaintiff's contention that even if the regulations above set forth are reasonable, compliance therewith is not mandatory under the circumstances of this case, in that the merchandise was actually exported. Further, plaintiff contends that an export entry

had to be made at the customhouse and the collector therefore was put upon his guard to see that the merchandise exported was as represented on the entry and was the merchandise that had been imported. This, it is alleged, constituted customs supervision of the exportation. We find no merit in this contention. All of the merchandise was released from customs custody and delivered to the importer. The record shows that the goods were not placed in bonded warehouse but were delivered to the custody of the importer. Nowhere does it appear that they ever were in the custody of any branch of the Government other than the customs. They were, therefore, released from Government custody prior to exportation. Refund of duties accruing thereon is expressly prohibited by section 558, *supra*. The fact that a bond governing the use of the merchandise was in existence cannot be construed to mean that the goods were theoretically in the custody of the Government. A perusal of the bond in question (collective exhibit 1) shows that it is nothing more than a conditional exemption from the payment of duties, dependent upon the use to which the merchandise is put. It does not call for return of the goods to Government custody for violation of its terms. The language of section 558, *supra*, is: "No * * * refund * * * of estimated or liquidated duty shall be allowed because of the exportation * * * after its release from the custody of the Government," with certain exceptions not here involved. All of the instant merchandise was released from customs custody and delivered to the importer. Under these circumstances, the refund of duties is prohibited. See *Hudson Shipping Co., Inc.* v. *United States*, 18 Cust. Ct. 17, C. D. 1038, and cases therein cited.

Upon the record and under authority of the decision cited we overrule the plaintiff's claims. Judgment will be rendered for the defendant in protest 144655–K (B).