ATLAS FIBERS CO., INC. *v.* UNITED STATES (No. 4786)[1]

United States Court of Customs and Patent Appeals, June 24, 1954

*Michael Stramiello, Jr.* for appellant.

*Warren E. Burger*, Assistant Attorney General (*Richard E. FitzGibbon*, special attorney, of counsel), for the United States.

[1] C. A. D. 572

[Oral argument December 9, 1953, by Mr. Stramiello and Mr. FitzGibbon]

Before GARRETT, Chief Judge, and O'CONNELL, JOHNSON, WORLEY, and COLE, Associate Judges

JOHNSON, Judge, delivered the opinion of the court:

This is an appeal from the judgment of the United States Customs Court, First Division, C. D. 1528, overruling appellant's protest against the refusal of the Collector of Customs to refund customs duties, under the provisions of section 557 (a) and/or section 558 (a)(1) of the Tariff Act of 1930, as amended, assessed and paid on the imported merchandise here involved.

The attorneys for the parties herein have stipulated that the second, third, fourth, fifth and sixth paragraphs of the decision of the Customs Court state the undisputed facts of the case. Those paragraphs read as follows:

The merchandise involved consisted of 565 bales of garnetted rayon waste which were imported in vessels which arrived at the port of New York on April 22, April 23, May 6, and May 29, 1947. It appears that after arrival of the merchandise entries for the same were not made within the time required by the regulations, and it was sent to certain bonded warehouses under general orders under the provisions of section 490 of the Tariff Act of 1930. On June 19, 1947, consumption entries 799479, 799480, and 799708, covering three of the shipments, were filed by Universal Transcontinental Corp. for the account of Bank of the Manhattan Co. which was declared in the declaration of nominal consignee or agent to be the actual owner for customs purposes of the merchandise, and estimated duties were paid thereon. On June 20, 1947, consumption entry 800897, covering the fourth shipment, was filed by Universal Transcontinental Corp. for the account of Andrew Verkozen, who was declared in the declaration of nominal consignee or agent to be the actual owner for customs purposes of the merchandise, and estimated duties were paid thereon.

Delivery permits covering the imported merchandise were issued to the importer of record, Universal Transcontinental Corp., and lodged on July 11 and 28, and November 19, and December 19, 1947, with the general order storekeepers of the warehouses where the merchandise was stored. It appears that, acting under the said delivery permits, the Government storekeepers released the said merchandise to the proprietors of the said warehouses, but that the merchandise itself was actually not moved from the places in the said warehouses where it had been previously stored.

Thereafter, the merchandise remained in such situation for approximately a year, and some time in December 1948, was sold to the protestant herein, Atlas Fibers Co., Inc., the seller specifically agreeing "to transfer to the buyer all rights as to the drawback of the duty paid on 221,111 lbs. approx." The purchaser then caused the merchandise to be transported by bonded truckmen to the exporting carriers and exported under customs supervision.

The entries involved had been liquidated on various dates from August 30, 1948, to January 6, 1949, and increased duties found due, which were paid. Under date of February 14, 1949, demand for a refund of the customs duties paid was made by the attorney for the plaintiff, acting in its behalf, and the same was refused by the collector under dates of February 21 and 23, 1949.

The present protest was thereupon filed on April 1, 1949, in which either directly or by timely amendment thereto the plaintiff claims that the duties paid should be refunded under the provisions of section 557 (a) and/or section 558 (a) (1) of the

Tariff Act of 1930, as amended, on the ground that the merchandise was in the custody of the Government from the time of its importation to the time of its exportation, or, in the alternative, if the merchandise was released from the custody of the Government between the said times, the duties should be refunded under the exception to the statutory prohibition of refunds after release of merchandise contained in section 558 (a) (1), relating to exportation of articles with respect to which a drawback of duties is expressly provided for by law.

The pertinent parts of the statutes involved read as follows:

SEC. 557. ENTRY FOR WAREHOUSE—WAREHOUSE PERIOD—DRAWBACK.

(a) Any merchandise subject to duty * * * may be entered for warehousing and be deposited in a bonded warehouse at the expense and risk of the owner, importer, or consignee. Such merchandise may be withdrawn, at any time within three years from the date of importation, for consumption upon payment of the duties and charges accruing thereon at the rate of duty imposed by law upon such merchandise at the date of withdrawal; or may be withdrawn for exportation or for transportation and exportation to a foreign country * * * without the payment of duties thereon * * *: *Provided,* That the total period of time for which such merchandise may remain in bonded warehouse shall not exceed three years from the date of importation. Merchandise upon which the duties have been paid and which shall have remained continuously in bonded warehouse or otherwise in the custody and under the control of customs officers, may be entered or withdrawn at any time within three years after the date of importation for exportation or for transportation and exportation to a foreign country * * * under such regulations as the Secretary of the Treasury shall prescribe, and upon such entry or withdrawal, and exportation or shipment, the duties thereon shall be refunded.

(b) The right to withdraw any merchandise entered in accordance with subsection (a) of this section for the purposes specified in such subsection may be transferred upon compliance with regulations prescribed by the Secretary of the Treasury. So long as any such transfer remains unrevoked the transferee shall have, with respect to the merchandise the subject of the transfer, all rights to file protests * * * which would otherwise be possessed by the transferor. * * *

SEC. 558. NO REMISSION OR REFUND AFTER RELEASE OF MERCHANDISE.

(a) No remission, abatement, refund, or drawback of estimated or liquidated duty shall be allowed because of the exporation or destruction of any merchandise after its release from the custody of the Government, except in the following cases:

(1) When articles are exported with respect to which a drawback of duties is expressly provided for by law;

In overruling appellant's claim for a refund of duties, the Customs Court held that the statute requires that the merchandise remain not only in the custody of the customs officers but also under their control. The court reasoned that the term "under the control" implies the right to exercise dominion over the merchandise such as would "exclude or impair that right in others, including the owner" and, that since the merchandise had been released to the warehouse proprietors the Government no longer retained control over it. The Customs Court therefore overruled the claim for refund under the provisions of section 557 (a) of the Tariff Act of 1930.

The Customs Court also overruled appellant's claim that a drawback of duties is expressly provided for in section 557 (a) upon articles

exported under the circumstances which obtained herein, and that by reason of the exception specified in section 558 (a) (1) said drawback may be allowed even though the merchandise had been released from the custody of the Government.

The court reasoned that the essence of the provision in section 557 (a) is continuous custody and control by the customs officers and that if such provision were made subject to the exception provided in section 558 (a) (1), the very basis for the allowance would be taken away and the provision would be, in effect, canceled and meaningless.

We agree with the Customs Court that "Certainly, the provisions of section 557 (a) and those of section 558 (a) (1) must be read together, and when so read Congress could hardly be understood to have provided in one section of the tariff act as a condition precedent to the allowance of refund or drawback that merchandise remain in continuous customs custody and control, and in a succeeding provision that the refund or drawback be allowable even though the condition be broken."

We think the case of *Belgam Corp.* v. *United States*, T. D. 47462, is in point. In that case the facts are very similar to those of the case at bar in that a timely entry was not made and the goods were consigned on general order to a bonded warehouse. At a later date consumption entries were made, the estimated duties were paid, and delivery permits were issued to the importer and filed with the Government storekeeper at the warehouse. In the *Belgam* case the importer exported the merchandise directly from the warehouse, while in the instant case the merchandise was sold to a third party before exportation. In that case refund of duties paid was denied. See also *Hudson Shipping Co.* v. *United States*, 18 Cust. Ct. 17, C. D. 1038 and cases therein cited.

Appellant cites *United States* v. *W. F. Mackay*, 34 C. C. P. A. (Customs) 127, C. A. D. 355, as sustaining its contention. We do not think that case is applicable to the instant case. In the *Mackay* case the fish involved therein had been released from custody by the customs officers but the Federal Security Administration, another agency of the Government, had not released the fish from its custody and this court properly held that the fish had not been released from Government custody under the provisions of section 558, *supra*. In the case at bar there is no agency of the Government other than customs interested and no other agency of the Government has ever exercised any control over the merchandise involved.

We have carefully considered appellant's brief and the cases therein cited but are of the opinion that the Customs Court reached the proper conclusion. Therefore, the judgment appealed from is *affirmed*.

GARRETT, Chief Judge, was present at the argument of this case, but, by reason of illness, did not participate in the decision.