FRANKLIN SUGAR REFINING COMPANY *v.* UNITED STATES.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE EASTERN DISTRICT OF PENNSYLVANIA.

No. 652. Argued April 27, 1906.—Decided May 28, 1906.

*United States* v. *American Sugar Co.*, *ante*, p. 563, followed, to effect that the treaty of December 11, 1902, with Cuba went into effect December 27, 1903.

Under § 20 of the Customs Administrative Act as amended December 15, 1902, 32 Stat. 753, merchandise in bonded warehouse on which duties are paid and permits for delivery issued to the storekeeper is thereupon withdrawn from consumption and subject to rate of duty in force at that time; this is not affected by the fact that the merchandise may remain in the warehouse after such permit is issued and if directly exported the owner will under § 2977 Rev. Stat. be entitled to drawbacks.

Under § 20 of the Customs Administrative Act merchandise in bonded warehouse is subject to the rate of duty in force at the time of withdrawal for consumption and not to the rate in force at time of liquidation.

Cuban sugar in bonded warehouse on which duty was paid and for which withdrawal permits were issued and delivered to the storekeeper prior to December 27, 1903, but which remained in the warehouse after that date were, subject to full duty, and not entitled to the 20% reduction under the act of December 17, 1903, and the treaty with Cuba.

THE facts are stated in the opinion.

*Mr. John G. Johnson,* with whom *Mr. John E. Parsons* and *Mr. H. B. Closson* were on the brief, for appellant.[1]

There was also a separate brief by *Mr. Edward S. Hatch* and *Mr. J. Stuart Tompkins* in behalf of certain importers having similar interests.

*The Solicitor General* for the United States.[1]

MR. JUSTICE McKENNA delivered the opinion of the court.

This case was argued and submitted with No. 269.

The appellant imported and entered at the 'port of Philadelphia on September 29, 1903, certain sugars, the product of the Republic of Cuba. The collector imposed on all the sugars the full rate imposed by the tariff act of July 24, 1897. Permits for the removal of all the sugars for consumption from bonded warehouse were issued to appellant before December 17, 1903, and all removed for consumption before that date except 1,250 bags, which were removed December 28, and 3,279 bags and 67 bags of sweepings on December 29.

It is contended (1) that all of the sugars having been imported after the exchange of ratifications of the treaty between the United States and Cuba, appellant was entitled to the reduction of 20% of the rates of duty imposed by the act of July 24, 1897; (2) that appellant was entitled in any event to such reduction as to the sugar not actually removed from bonded warehouse until after December 27, 1903. The board of appraisers sustained the collector and the Circuit Court affirmed the order of the board.

As to the first contention, this case is exactly like that of *United States* v. *American Sugar Refining Company,* just decided. We decided that under the treaty between the United

---

[1] For abstracts of arguments see *United States* v. *American Sugar Refining Company, ante,* p. 563, argued simultaneously herewith.

States and Cuba and the act of Congress approved December 17, 1903, there quoted, imports from Cuba were not entitled to the reduction of the duties imposed by the act of July 24, 1897, until December 27, 1903, the date proclaimed by the President of the United States and the President of Cuba for the commencement of the operation of the treaty.

The answer to the second contention depends upon section 20 of the Customs Administrative Act, as amended by the act of December 15, 1902. 32 Stat. 753. Section 20 provides as follows:

"That any merchandise deposited in any public or private bonded warehouse may be withdrawn for consumption within three years from the date of the original importation on payment of the duties and charges to which it may be subject by law at the time of such withdrawal: *Provided,* That the same rate of duty shall be collected thereon as may be imposed by law upon like articles of merchandise imported at the time of the withdrawal: *And provided further,* That nothing herein shall affect or impair existing provisions of law in regard to the disposal of perishable or explosive articles."

The section needs no interpretation. It is clear that it subjects merchandise to the duties prescribed by law at the time it is withdrawn for consumption. *Mosle* v. *Bidwell,* 130 Fed. Rep. 334. And our inquiry then must be, when were the sugars in controversy withdrawn for consumption? If before December 27, 1903, they were dutiable under the act of July, 1897; if after December 27, they were entitled to 20% reduction of the duties prescribed by that act.

Between September 29 and October 10 withdrawal entries were made of the entire cargo and duties at regular rates paid thereon. The delivery permits were lodged with the storekeeper at the same time. This put the sugars at the absolute disposition of the importers. It may be that the Government had the custody of them, or rather the joint custody with the importer. Section 2960, Rev. Stat. But it was a mere manual custody, not claiming any right over them or right to

detain them. Indeed it may be said that the payment of duties and the delivery of the permit to the storekeeper operated to give up the custody which the Government had jointly with the importer before the payment of duties. It is, however, pointed out by appellant that by section 2977, Rev. Stat., merchandise upon which duty has been paid may remain in the warehouse, "in the custody of the officers of the customs, at the expense and risk of the owners of such merchandise, and if exported directly from such custody to a foreign country within three years, shall be entitled to return duties." Whether this section covers a case where a permit has been issued it is not necessary to decide. It is enough to say that the section is part of the plan for the payment of drawbacks. The merchandise is identified by remaining in the warehouse. Section 2978, Rev. Stat. We think, therefore, that where duties are paid upon merchandise and permits issued for its removal which have been delivered to the storekeeper, it is withdrawn for consumption and is subject to duties as of that time.

A contention is made based on the date of ultimate liquidation of duties, which was not until after December, 1903. In case No. 269 the effect of liquidation was apparently urged to be to entitle the importer to the benefit of the treaty, which it was contended went into operation April 10, 1903, although the act giving the treaty effect was not passed until after the importation of the sugars. In other words, it was said "before the duties had been liquidated; so much of the statute as imposed more than eighty per cent of the regular duties upon these imports was repealed, and the repeal by its very terms took effect as of a date prior to the date of the importation." It was not necessary in No. 269 to notice the contention, as we decided the treaty did not go into effect until December 27, 1903. In the case at bar the date of final liquidation is seemingly given greater force. It is contended that "there was no liquidation until after the convention was concededly in effect," and was therefore "required to be made in accordance

with the tariff act as then in force." In other words, whether the treaty went into effect in April or in December was unimportant, being in effect under the act of Congress when liquidation was made it determined the rate of duty. The proposition, if true, is decisive and makes all others in the case valueless. Appellant submits the proposition without other argument than its statement, and we may, therefore, reply to it briefly. It is plainly in contradiction of section 20 of the Customs Administrative Act as amended. That section subjects merchandise to the rate of duty in force at the time of withdrawal for consumption, not the rate in force at the time of liquidation. See *United States* v. *Burr*, 159 U. S. 78, 83, 84.

*Judgment affirmed.*