Camrbele, Chief Justice,
delivered the opinion of the court:
James J. Flannery was the owner of 423 shares of the capital stock of the Flannery Bolt Co., acquired by him prior to March 1, 1913, at a price' less than its fair market price and value was on March 1, 1913, and also less than he sold the same shares for in October, 1919. The fair market price and value of these 423 shares on March 1, 1913, was $275 per share, making a total value of $116,325. He sold them in October, 1919, for $225 per share, receiving therefor a total sum of $95,175. The difference between the values at these two dates was a loss of $21,150. As between the original cost of the shares purchased prior to March 1, 1913, and the price received upon their sale after March 1, 1913, there was no loss.
James J. Flannery died March 6, 1920. Shortly thereafter the executors of his estate filed a return of his income for 1919, and upon this return claimed a loss based on the *722 difference between the fair market price and value on March 1, 1913, of the stock already mentioned and the price received therefor upon its sale in October, 1919. This claimed loss was deducted in the return in computing the net income of the decedent. Thereafter, on or about June 2, 1923, the collector of internal revenue made demand upon the executors for additional taxes on the income of James J. Flannery for the year 1919, of which additional assessment $7,440.67 was attributable to the disallowance by the Commissioner of Internal Bevenue of the loss on the sale of the 423 shares of stock in the Flannery Bolt Co. The additional taxes so demanded were paid by the executors under protest and duress, and on or about July 13, 1923, they duly filed with the commissioner a claim for refund which he disallowed. This suit seeks a recovery of the sum of $7,440.67, based on the disallowance of the claimed loss in the stock transaction.
The question for decision is whether under the revenue act of 1918, 40 Stat. 1057, the taxpayer in computing his net income for the year 1919 can make a deduction therefrom as for a loss sustained during the taxable year of the difference between the fair market price or value of certain corporate stock on March 1, 1913, and the price at which it was sold during 1919, this selling price being less than its value on March 1, 1913, but more than the price at which it was acquired, and the stock having been acquired before March 1. 1913.
Section 210 of the act imposes upon “ the net income ” of every individual a stated normal tax for the calendar year 1918, and for each year thereafter a lesser rate. Section 212 defines “ net income ” of an individual as meaning the gross income as defined in section 213, less the deductions allowed by section 214.
Section 213 declares what the term “ gross income ” includes and also provides that the term shall not include certain designated “ items, which shall be exempt from taxation under this title.”
Section 214, under the heading “ Deduction allowed,” provides that in computing net income there shall be allowed “as deduction” a number of items listed as “(1) business *723 expenses, (2) interest on certain indebtedness, (3) taxes paid.
“(4) Losses sustained during the taxable year and not compensated for by insurance or otherwise if incurred in trade or business.
“(5) Losses sustained during the taxable year and not compensated for by insurance or otherwise if incurred in any transaction entered into for profit, though not connected with the trade or business.’''
There are a number of other authorized deductions.
The act anticipated the question as to what are “ losses ” that áre thus authorized to be deducted because it prescribes a “ basis for determining gain or loss,” and provides:
“SeotioN 202 (a). That for the purpose of ascertaining the gain derived or loss sustained from the sale or other disposition of property, real, personal, or mixed, the basis shall be—
“(1) In the case of property acquired before March 1, 1913, the fair market price or value of such property as of that date; and
“(2) In the case of property acquired on or after that date, the cost thereof * * *.
In interpreting these provisions it is a cardinal rule that the intention of Congress be given effect. Where the statute is expressed in plain and unambiguous terms, Congress should be intended to mean what they have plainly expressed. Chief Justice Marshall in United States v. Fisher, 2 Cranch, 358, 386, said: “Where the intent is plain nothing is left to construction.” In St. Paul R. R. Co. v. Phelps, 137 U. S. 528, 536, it. is said that where a statute is clear and free from all ambiguity, the letter of it is not to be disregarded in favor of a mere presumption as to what is termed the policy of the Government, even though it may be the settled policy of a department. In Insurance Co. v. Ritchie, 5 Wall. 541, 545, the court say that when terms are unambiguous we may not speculate on probabilities of intention. And in the State Tonnage Tax Cases, 12 Wall. 204, 217, it is said: “ Legislative enactments, where the language is *724 unambiguous, can not be changed by construction, nor can the language be divested of its plain and obvious meaning.” See Crawford v. Brooks, 195 U. S. 176, 189; Franklin Sugar Co. v. United States, 202 U. S. 580, 582; White v. United States, 191 U. S. 545, 551.
It is a primary and general rule of statutory construction that the intent of the lawmaker is to be found in the language that he has used. See Goldenberg Case, 168 U. S. 95, 102. In Bates Refrigerating Co. v. Sulzberger, 157 U. S. 1, 33, the following language is adopted: “ It is not only the safer course to adhere to the words of a statute construed i n their ordinary import, instead of entering into any inquiry as to the supposed intention of Congress, but it is the imperative duty of the court to do so.” See Lake County v. Rollins, 130 U. S. 662, 670. Another familiar rule is that the statute must be construed as a whole. Its clauses are not to be segregated, but every part is to be construed with reference to every other part. See Blair v. Chicago, 201 U. S. 400, 463; Market Co. v. Hoffman, 101 U. S. 112, 115; Pollard v. Bailey, 20 Wall. 520, 525. These rules are the more applicable when it becomes the duty of a court to construe a taxing statute because such a statute directly concerns the individual citizen as well as others, and the popular or received import of its words should furnish the general rule of its interpretation to the end that its provisions may be the better understood by those who must pay the taxes which it imposes. See Maillard v. Lawrence, 16 How. 251, 261.
In the revenue act of 1918 Congress was imposing a tax on the net income of the individual, among others, and defined gross income. It provided that in computing this taxable net income there should be allowed certain “ deductions.” These deductions included losses sustained during the taxable year if incurred in trade or business, or if incurred in any transaction entered into for profit though not connected with trade or business. If the question of the meaning of these deductible losses were left to section 214 alone its solution would be more difficult, but it was not permitted to rest in such uncertainty. By section 202 (a) *725 a basis is established for. the purpose of ascertaining the loss sustained from the sale of property, and in the case of property acquired before March 1, 1918, this basis is the fair market price or value of such property as of that date. With this value found and the sale price fixed, the loss sustained, if any, is the difference between these amounts. The subject matter of section 214 is the ascertainment of net income less certain authorized deductions. Many of these deductions are allowable only because Congress authorized them, and what deductions should be allowed is plainly a matter of legislative discretion.
The present case has to do with losses sustained, and the loss which Congress authorized to be deducted was a loss measured by the difference between the price stated at one time and another time. Manifestly the meaning of losses sustained as the words appear in section 214 is not to be determined independently of other parts of the act. Even a technical word is not construed technically where otherwise defined in the statute itself. See Pirie v. Chicago Title Co., 182 U. S. 438, 443. Congress could have omitted the basis for determining loss, but it did not do that, and inserted section 202 instead. The losses sustained which are authorized to be deducted are losses ascertained as the act requires. It thus defines what are deductible losses. They are not required to be such as could arise if the property were sold for less than it cost. Congress could have required that such a loss be shown, but it did otherwise. It carefully distinguished between “property acquired before March 1, 1913,” and property acquired on or after that date. As to the former, the price or value as of March 1, 1913, governs, and as to the latter, “ the cost thereof ” governs. The first of these distinctions is wiped out if the cost prior to March 1 be required, and the second clause is useless if the original cost of the property must in every case be used in ascertaining the deductible loss:
A fact not to be lost sight of is that Congress has authorized deductions in computing the net income and that the statutory rule for ascertaining the loss sustained is a prescribed method of finding these authorized deductions. This statutory rule as applicable to property acquired before *726 March 1 does not purport to show what is called in defendant’s brief an “ actual ” loss, by which is meant a loss based on the original cost and selling price; but as applied to property acquired on or after March 1, 1913, the statute does contemplate an actual loss before it is properly deductible. Differently expressed, the statute adopts a more or less arbitrary basis for ascertaining a “ loss sustained ” on property acquired before March 1, 1913, and sold after the passage of the act of 1918, and it was competent for Congress to adopt this basis and authorize the resultant deduction. Speaking for the court, Mr. Justice Harlan, in Bates Refrigerating Co. v. Sulzberger, 157 U. S. 1, 36, said: “ In our judgment the language used is so plain and unambiguous that a refusal to recognize its natural, obvious meaning would be justly regarded as indicating a purpose to change the law by judicial action, based upon some supposed policy of Congress. ” We think it' the duty of this court to give effect to the language of the enactment.
Upon the question under consideration we find no material difference between the revenue act of 1918 and the two prior enactments of 1910 and 1917, 39 Stat. 756, 39 Stat. 1000, and the view we have taken is in keeping with the regulations of the Treasury (Treas. Dec. 2831) in force until July 28, 1921. (See Treasury Decision 3206.) It is urged, however, that the cases of Goodrich v. Edwards, 255 U. S. 527, and Walsh v. Brewster, 255 U. S. 536, are decisive of the question. These cases deal with the question of “ gain ” in the act of 1916. They do not discuss or decide whether a loss claimed and ascertained as in this case is a proper deduction in computing net income of the individual under the revenue act of 1918. That the right to tax income and the right to authorize deductions are governed by different considerations is manifest. Our conclusion is that the plaintiffs are entitled to recover.
Judgment for plaintiffs in the sum of $7,440.67, with interest thereon at the rate of 6 per cent per annum from June 11, 1923. And it is so ordered.
Hat, Judge; Dowxey, Judge, and Booth, Judge, concur.