(C. D. 1367)

MUSSMAN & SHAFER, INC. *v.* UNITED STATES

## United States Customs Court, First Division

(Decided November 1, 1951)

*Tompkins & Tompkins* (*Allerton deC. Tompkins* of counsel) for the plaintiff.
*David N. Edelstein*, Assistant Attorney General (*John J. McDermott* and *Samuel D. Spector*, special attorneys), for the defendant.

Before OLIVER, COLE, and MOLLISON, Judges; COLE, J., concurring

MOLLISON, Judge: On September 16, 1946, there was imported through the port of New York a shipment of plywood from Finland. At that port the merchandise was entered for immediate transportation without appraisement to Cincinnati, Ohio, the port of destination, and was laden on nine railroad cars for that purpose. On October 18, 1946, consumption entry No. 259 was filed at the port of Cincinnati covering the entire shipment, and a permit of delivery on customs Form No. 7501–A was issued for the release of the shipment.

The railroad cars did not arrive at Cincinnati at the same time, but arrived singly and in groups over a period of time from October 17, 1946, to October 31, 1946, and the merchandise covered thereby was actually released from customs custody on various dates from October 21, 1946, to October 31, 1946. The following schedule, offered and received in evidence without objection as exhibit 1, shows the pertinent information with respect to the cars making up the shipment:

| Railroad car | | Date of arrival at Cincinnati | Date released from customs custody |
|---|---|---|---|
| GN | 42419 | 10/17/46 | 10/21/46 |
| ATSF | 151104 | 10/23/46 | 10/23/46 |
| NYC | 177656 | 10/22/46 | 10/23/46 |
| SAL | 15433 | 10/24/46 | 10/25/46 |
| " | 28616 | 10/24/46 | 10/25/46 |
| SOU | 12843 | 10/28/46 | 10/28/46 |
| PA | 95587 | 10/31/46 | 10/31/46 |
| NYC | 135149 | 10/31/46 | 10/31/46 |
| ATSF | 147133 | 10/31/46 | 10/31/46 |

Section 318 of the Tariff Act of 1930 (19 U. S. C. § 1318), under the caption "Emergencies," provides as follows:

Whenever the President shall by proclamation declare an emergency to exist by reason of a state of war, or otherwise, he may authorize the Secretary of the Treasury to extend during the continuance of such emergency the time herein prescribed for the performance of any act, and may authorize the Secretary of the Treasury to permit, under such regulations as the Secretary of the Treasury may prescribe, the importation free of duty of food, clothing, and medical, surgical, and other supplies for use in emergency relief work. * * *

The Veterans' Emergency Housing Act of 1946 (60 Stat. 207, 50 U. S. C. App. §§ 1821–1833) recognized the existence of an emergency shortage of housing, and, acting under the authority of section 318,

*supra*, the President of the United States on October 25, 1946, proclaimed as follows:

Whereas the long-term housing shortage and the war have combined to create an unprecedented emergency shortage of housing, particularly for veterans of World War II and their families; and

Whereas section 1 of the Veterans' Emergency Housing Act of 1946 recognizes the aforesaid unprecedented emergency; and

Whereas it is imperative that immediate action be taken on a temporary basis to increase the available supplies of timber, lumber, and lumber products for housing purposes:

Now, therefore, I, Harry S. Truman, President of the United States of America, under and by virtue of the authority vested in me by the Constitution and laws of the United States, and in particular by section 318 of the Tariff Act of 1930 (46 Stat. 590, 696), do hereby declare an emergency to exist, and do hereby authorize the Secretary of the Treasury to permit, until the termination of the provisions of the Veterans' Emergency Housing Act of 1946, or until the President shall have declared that the emergency declared herein has terminated, whichever shall first occur, under such regulations and subject to such conditions as the Secretary may deem necessary, the importation free of duty of any articles which the Housing Expediter designates and certifies as timber, lumber, or lumber products suitable for the construction or completion of housing accommodations. [Presidential proclamation No. 2708, 11 F. R. 12695; 81 Treas. Dec. 231, T. D. 51565.]

Pursuant to the provisions of the foregoing proclamation, the Acting Secretary of the Treasury promulgated regulations (81 Treas. Dec. 231, T. D. 51565), the pertinent portions of which read as follows:

**Sec. 53.3  Timber, lumber, and lumber products specified by Housing Expediter admissible free of duty and import tax.**—(a)  Pursuant to the authority contained in the proclamation of the President dated October 25, 1946, collectors of customs are hereby authorized to admit free of duty, and import taxes provided for in section 3420, Internal Revenue Code, if entered for consumption or withdrawn from warehouse for consumption on and after the date of the proclamation and until the termination of the provisions of the Veterans' Emergency Housing Act of 1946, or until the President shall have declared that the emergency declared in the proclamation has terminated, whichever shall first occur, the classes of timber, lumber, and lumber products set forth in the following list which have been designated and certified by the Housing Expediter as timber, lumber, or lumber products suitable for the construction and/or completion of housing accomodations:

\*　　\*　　\*　　\*　　\*　　\*　　\*

3.  Plywood, classifiable under paragraph 405, Tariff Act of 1930.

\*　　\*　　\*　　\*　　\*　　\*　　\*

(b)  The Housing Expediter may designate and certify under the proclamation other articles or classes of articles, such as millwork as defined in Civilian Production Administration Order L–359, paragraph 5, of October 18, 1946, prefabricated and ready-cut houses, portable houses, prefabricated panels for houses, and panelized parts, all the foregoing in chief value of wood.  In such an event, the Housing Expediter will forward his certificate to the Secretary of the Treasury and the list in paragraph (a) will be amended, or he will forward a certificate

covering each entry directly to the collector of customs. Collectors of customs are hereby authorized to grant entry free of duty, and import taxes provided for in section 3420, Internal Revenue Code, to articles covered by such certificates when the articles are entered for consumption or withdrawn from warehouse for consumption during the period prescribed in paragraph (a).

\*  \*  \*  \*  \*  \*  \*

It appears that on October 18, 1946, the date when the consumption entry herein was filed at the subport of Cincinnati, neither the plaintiff nor its customhouse broker, who actually handled the entry of the plywood, knew that Presidential proclamation No. 2708, *supra*, would be made on October 25, 1946, and the merchandise was entered as "Birch Plywood" subject to duty at the rate of 25 per centum ad valorem under the provision therefor in paragraph 405 of the Tariff Act of 1930, as modified by the trade agreement with Finland, T. D. 48554.

Subsequently, when the Presidential proclamation was published, effort was made on behalf of the plaintiff to have the entry liquidated free of duty under the provisions of the said proclamation, but the collector took the position, as the defendant does here, that the merchandise was not entitled to the benefit of the provisions of the Presidential proclamation because it was entered on October 18, 1946, prior to the effective date, viz, October 25, 1946, of the said proclamation. The merchandise was classified by the collector as dutiable under paragraph 405, *supra*, as amended, and the entry was liquidated assessing duty accordingly.

The present protest was thereupon filed in which it is claimed (1) that all of the merchandise was entitled to free entry under the Presidential proclamation, or (2), alternatively, that all of the merchandise "which arrived and was imported at Cincinnati on and after October 25, 1946, is free of duty" under said Presidential proclamation. Further claims relating to the reasonableness and validity of the regulations issued under the authority of the said proclamation, to wit, those reported in T. D. 51565, were waived, withdrawn, and abandoned by plaintiff's counsel, and it appears from the brief filed on behalf of the plaintiff that the claim relied upon is that free entry should have been accorded the merchandise which was released by customs on and subsequent to the proclamation date, October 25, 1946, or, alternatively, that which arrived at Cincinnati on and subsequent to that date.

It is to be noted that the Presidential proclamation authorized the Secretary of the Treasury to permit, under such regulations and subject to such conditions as the Secretary might deem necessary, "the importation free of duty" of certain timber, lumber, or lumber products. The regulations prescribed by the Secretary pursuant thereto authorized collectors of customs to admit free of duty such

merchandise "if entered for consumption or withdrawn from warehouse for consumption on and after the date of the proclamation."

The word "importation" has been used in tariff statutes in two senses. On the one hand, it has been used to denote the time when the jurisdiction of the United States over merchandise brought into the country attaches. On the other hand, it has been used to denote the time when the status of the merchandise with respect to the duties chargeable thereon is to be determined. See *Washington State Liquor Control Board* v. *United States*, 20 Cust. Ct. 173, C. D. 1104. From the context of the proclamation and the regulations, it is clear that the latter meaning is the one which applies here, and the procedure here adopted by the Secretary of the Treasury accords with that which generally applies when a change in the duty status of imported merchandise is made by law.

At any rate, no one here questions the fact that the plywood in question, prior to October 25, 1946, had acquired the status of imported merchandise in the sense that it was subject to the requirements of the tariff laws of the United States. The question raised by the parties is, under which law was duty to be assessed—whether under that in existence prior to October 25, 1946, at which time such merchandise was subject to duty at the rate of 25 per centum ad valorem under the provisions of paragraph 405 of the Tariff Act of 1930, as amended, or under the law in existence on and after October 25, 1946, at which time such merchandise was entitled to free entry under the provisions of the tariff law modified by Presidential proclamation No. 2708. Obviously, the decision in this case turns upon the meaning to be ascribed to the term "entered for consumption." The plaintiff contends that that term refers to a transaction which is not complete so that the goods may be said to have been "entered for consumption" until all of the acts and formalities required in connection with the entry of merchandise—including the filing of the entry papers and payment of estimated duties on the part of the importer, and acceptance of the entry and issuance of a delivery permit on the part of the Government—have been performed, *and, in addition, either the merchandise be present and available for delivery to the importer at the port of entry or be actually physically released to the importer*. The defendant contends that the term refers only to the filing of the entry document with the collector.

In our view, both the language of the regulation itself and the decided cases tend to support the contention of the plaintiff. In *United States* v. *Legg*, 105 Fed. 930, at page 933, Judge Lacombe of the Circuit Court of Appeals, Second Circuit, quoted the following from the decision of District Judge Hoffman in *United States* v. *Cargo of Sugar*, 25 Fed. Cas. 288, No. 14,722:

\* \* \* The term "entry," in the acts of congress, is used in two senses. In many of the acts it refers to the bill of entry,—the paper or declaration which the merchant or importer in the first instance hands to the entry clerk. In other statutes it is used to denote, not a document, but a transaction,—a series of acts which are necessary to the end to be accomplished, viz. the entering of the goods.

In the *Legg* case, the context indicated that the written document required of an importer and not the entire transaction or series of acts necessary to the entering of goods was intended. We are satisfied that the language and context of the regulations here involved indicate that the series of acts necessary to the entering of the goods was intended to be meant by the words "entered for consumption." Those words are coupled with the words "or withdrawn from warehouse for consumption," indicating an intention to determine the duty status of the goods at the time they enter the domestic commerce of the United States.

The decided cases are uniform in holding that in the absence of contrary statutory provision goods are not "entered" or "withdrawn" for the purpose of determining the duties applicable thereto until the transaction is complete by the payment of duties and the issuance of an unconditional delivery permit passing control of the goods to the importer or owner. See *Kee Co. et al.* v. *United States*, 13 Ct. Cust. Appls. 105, T. D. 40943; *Constance* v. *United States*, 11 Ct. Cust. Appls. 435, T. D. 39436; *United States* v. *Cronkhite*, 9 Ct. Cust. Appls. 129, T. D. 37980; *Five Per Cent Cases*, 6 Ct. Cust. Appls. 291, T. D. 35508; *Page N. Goffigon* v. *United States*, 24 Cust. Ct. 81, C. D. 1212; *International Paper Co.* v. *United States*, 24 Cust. Ct. 95, C. D. 1215; *Washington State Liquor Control Board* v. *United States, supra*; *F. B. Wilcon* v. *United States*, 13 Cust. Ct. 96, C. D. 876; *John A. Conkey & Co.* v. *United States*, 11 Cust. Ct. 217, Abstract 48554; *Tassini & Salisch-Parver* v. *United States*, 6 Cust. Ct. 571, Abstract 45512; *F. J. Benkart & Co., Inc.* v. *United States*, 2 Cust. Ct. 466, C. D. 177.

Behind these decisions is the general rule that the dutiable status of imported merchandise is to be determined at the time it enters into the commerce of the country. A reading of the proclamation and the regulations prescribed in pursuance thereof is convincing that no departure from the general rule was intended in this case.

It has, however, been pointed out by counsel for the defendant that the entry papers in this case had been filed and accepted, and the estimated duties paid, and a delivery permit issued to the importer, all prior to October 25, 1946, the effective date of the Presidential proclamation. Counsel for the plaintiff, in reply, points out that at that time part of the merchandise, to wit, that contained in railroad cars Nos. SOU 12843, PA 95587, NYC 135149, and ATSF 147133, had not arrived at Cincinnati, and that consequently the delivery permit was inoperative and ineffective as to such merchandise. Coun-

sel for the plaintiff has cited the following cases for the proposition that "entry" implies the presence of the merchandise at the port of entry: In re *Alex Murphy & Co.*, 28 Treas. Dec. 285, T. D. 35171; *Tassini & Salisch-Parver* v. *United States, supra*; *Spencer Lens Co.* v. *United States*, 55 Treas. Dec. 107, T. D. 43146; and *United States* v. *Cordero*, 1 Ct. Cust. Appls. 107, T. D. 31114.

The foregoing cases stand squarely for the proposition for which cited, and in our view the point made by plaintiff's counsel is well-taken. In the early case of *United States* v. *Vowell and M'Clean*, 5 Cranch (9 U. S.) 368, 3 L. ed. 128, it was held by the Supreme Court of the United States that duties upon goods imported do not accrue until their arrival at the port of entry. In that case, a vessel with a cargo of salt arrived within a collection district, but not within the port of entry, during a period when a duty was laid upon imported salt, but did not arrive at the port of entry until the day after the effective date of an act making such salt duty-free, and it was there held that the said salt was not chargeable with duty.

Of even more particular application to the decision in this case we think is the decision of the Supreme Court in the case of *Hartranft* v. *Oliver*, 125 U. S. 525, 31 L. ed. 813. There, a vessel having on board certain olive oil arrived at the port of Philadelphia on Saturday, June 30, 1883, at which time the duty thereon was $1 per gallon. The effective date of the Tariff Act of 1883 was July 1, 1883, and therein the duty on such oil was reduced to 25 per centum ad valorem. From the time of the arrival of the vessel until the discharge of the cargo, sometime after July 1, 1883, the vessel and the goods were in the custody of an officer of the customs, and hence under the control of the Government, and in holding the oil to be chargeable only with the duty in effect on and after July 1, 1883, the Supreme Court, through Mr. Justice Field said:

* * * In other words, goods imported before the Act took effect, if kept in the custody and control of the government, are to be charged with duties according to the law in force when they are entered for consumption; that is, *when passed over to the control of the importer or owner*. The place in which the goods are thus kept is not the essential fact, but the custody of the government, and the consequent exclusion of control over them by the owner, which calls for the suspension of previous duties. *There is manifest justice in the rule that goods thus withheld from the control of the owner or importer shall be subject only to such duties as are leviable by the law when he is at liberty to take possession of them.* Ordinarily, goods in the custody and control of officers of the customs are placed in a public store or bonded warehouse; and thus the designation of the goods as thus placed is, in the legislation of Congress, in effect a designation, and no more, of their being in such custody. But goods on board of a ship, in charge of a custom house officer, preliminary to their removal to a public store or a bonded warehouse, and during the time necessary for that purpose, are *in like custody,* and so are, within the spirit and intent of the law, subject only to such duties as are leviable when the goods are freed from such custody. So far as the govern-

ment is concerned, they are in the same position as if technically in a public store or bonded warehouse. When in either of those places, they cannot be removed without a permit from the collector. When on shipboard, in charge of a custom house inspector, they are in the same condition, and cannot be removed without a like permit. * * * [Italics supplied.]

An examination of the record herein shows that the permit of delivery, issued October 18, 1946 (and which is part of the official papers which were received in evidence as collective exhibit 2), was not an unconditional permit of delivery. It clearly appears from the face thereof that before delivering the merchandise to the importer or owner under the said permit, the inspector was required to draw a representative sample for the appraiser and to measure the plywood. It therefore cannot be said that the permit of delivery was unconditional—something had to be done on the part of the Government prior to delivery of the plywood either actually or constructively to the control of the importer or owner.

The nature and effect of delivery permits was thoroughly discussed in the case of *Parfums Corday, Inc.* v. *United States*, 8 Cust. Ct. 161, C. D. 597, and a review of the authorities on the subject was summed up as follows:

A careful reading of the authorities cited indicates that physical withdrawal of the goods from warehouse or even presentation of the delivery permit to the storekeeper is not necessary to effect entrance of the goods into the commerce of the country, but that *such entrance takes place when control over the goods passes to the importer and nothing remains to be done by the customs officials or employees except to honor the delivery permit and release the goods.* * * * [Italics supplied.]

The fact that the situation involved in the *Parfums Corday, Inc.*, case concerned a withdrawal from warehouse while the present case concerns an entry for consumption makes no difference in the application of the law as to the effect of the issuance of delivery permits. As has been noted, it was the purpose to determine the dutiable status of merchandise subject to the provisions of Presidential proclamation No. 2708 at the time it entered the commerce of the country, whether it was "entered for consumption or withdrawn from warehouse for consumption." So far as the effect of the delivery permit is concerned, the situation is the same whether the merchandise was being introduced into the commerce of the United States by withdrawal from warehouse or by entry for consumption. See also in this connection the observation of the Supreme Court in the *Hartranft* v. *Oliver* case, *supra*, quoted hereinabove.

From what has been said, it is obvious that as to the merchandise contained in railroad cars Nos. GN 42419, ATSF 151104, and NYC 177656, all of which arrived in Cincinnati and was released to the importer prior to October 25, 1946, the protest claim must be overruled. As to the merchandise which did not arrive in Cincinnati

until after October 25, 1946, viz, that contained in railroad cars Nos. SOU 12843, PA 95587, NYC 135149, and ATSF 147133, and which consequently could only have been inspected and measured after October 25, 1946, the protest claim must be sustained. As to the merchandise contained in railroad cars Nos. SAL 15433 and SAL 28616, the situation is that those cars arrived in Cincinnati on October 24, 1946, *before* the effective date of the proclamation, but were actually released *on* October 25, 1946, the said effective date. The endorsement of the inspector upon the delivery permit, however, indicates that official action upon the merchandise contained in those cars, presumably including sampling and measurement, as well as release, took place on October 25, 1946, and it is consequently entitled to the benefit of the treatment accorded by the proclamation, and the protest claim as to such merchandise must be sustained.

Before concluding this opinion, reference must be made to a phase of the case which received considerable treatment in both the trial of the issue and the briefs filed on behalf of the parties. As has been stated hereinbefore, when Presidential proclamation No. 2708 was published, efforts were made on behalf of the plaintiff to have the entry liquidated free of duty under the provisions of the same proclamation. Part of these efforts took the form of correspondence between the plaintiff's customs broker and the National Housing Agency in which the former sought to induce the latter to issue a certificate, apparently under subsection (b) of the regulations issued by the Secretary of the Treasury in accordance with the Presidential proclamation, designating the articles covered by the entry herein as timber, lumber, or lumber products suitable for the construction or completion of housing accommodations within the meaning of the proclamation.

These efforts did not meet with success until August 19, 1947, some 4 days after the day on which the benefits of the Presidential proclamation expired, when the Housing Expediter issued the desired certificate. On the ground that prior to the issuance of the certificate, the Housing Expediter had been divested of all authority to act under Presidential proclamation No. 2708, the collector refused to honor the certificate and reliquidate the entry allowing free entry. The defendant herein takes a similar position, contending that the certificate is without legal basis and is null and void.

As we view the situation shown by the record, it is unnecessary to determine whether the certificate of the Housing Expediter in dispute is valid or invalid. An examination of section 53.3 of the regulations issued pursuant to Presidential proclamation No. 2708 shows that

provision is made for the granting of the exemption from duty in three situations:

(1) As to the articles or classes of articles covered by the list contained in subsection (a) of the said regulations which the Housing Expediter had, at the time of the issuance of the regulations, designated and certified to the Secretary of the Treasury as timber, lumber, or other products suitable for the construction and/or completion of housing accommodations. It will be noted that the third item on the said list is "Plywood, classifiable under paragraph 405, Tariff Act of 1930," which description fits the merchandise at bar.

(2) As to other articles or classes of articles which the Housing Expediter might designate and certify to the Secretary of the Treasury under subsection (b) of the regulations, in which case the list in paragraph (a) was to be amended by the Secretary.

(3) As to other articles or classes of articles which the Housing Expediter might designate and forward a certificate directly to the collector of customs.

The procedure which was sought to be invoked by the plaintiff's customhouse broker in this case is obviously that in situation (3) described above. However, in view of the fact that the merchandise at bar is covered by situation (1) and is named in the list contained in the regulation, the Housing Expediter's special certificate was superfluous, and its validity is not a necessary element of proof of the plaintiff's case in this court.

Judgment will therefore issue sustaining the protest to the extent hereinbefore indicated, and overruling the same in all other respects.

### CONCURRING OPINION

Cole, Judge: This case was heard and submitted before a single member of this court on circuit under statutory authorization issued by the chief judge to hear or to hear and determine the case (28 U. S. C., 1946 ed., Supp. III, § 254).

My views set forth in *Geo. S. Bush & Co., Inc., et al.* v. *United States,* 22 Cust. Ct. 158, C. D. 1175, questioning the jurisdiction of the division to decide a case similar to these proceedings, continue as the minority expression from the division. Under the practice and procedure of the court and the rules applicable thereto, much litigation before the court is dependent upon my participation in a decision of the same. Adhering, however, to my views expressed in the *Bush* case, *supra,* but for the purpose of expediting the work of the court, I am joining my colleagues in the disposition of this case, and concur in the opinion and judgment attached thereto.