(C. D. 1528)

ATLAS FIBERS CO., INC. *v.* UNITED STATES

United States Customs Court, First Division

(Decided June 3, 1953)

*Eugene R. Pickrell* (*Michael Stramiello, Jr.*, of counsel) for the plaintiff.
*Charles J. Wagner*, Acting Assistant Attorney General (*Joseph E. Weil* and *Richard E. FitzGibbon*, special attorneys), for the defendant.

Before OLIVER and MOLLISON, Judges

MOLLISON, Judge:    In this case there is no real dispute as to the facts; the dispute concerns the legal effects or consequences which flow from the said facts.

The merchandise involved consisted of 565 bales of garnetted rayon waste which were imported in vessels which arrived at the port of New York on April 22, April 23, May 6, and May 29, 1947. It appears that after arrival of the merchandise entries for the same were not made within the time required by the regulations, and it was sent to certain bonded warehouses under general orders under

the provisions of section 490 of the Tariff Act of 1930. On June 19, 1947, consumption entries 799479, 799480, and 799708, covering three of the shipments, were filed by Universal Transcontinental Corp. for the account of Bank of the Manhattan Co. which was declared in the declaration of nominal consignee or agent to be the actual owner for customs purposes of the merchandise, and estimated duties were paid thereon. On June 20, 1947, consumption entry 800897, covering the fourth shipment, was filed by Universal Transcontinental Corp. for the account of Andrew Verkozen, who was declared in the declaration of nominal consignee or agent to be the actual owner for customs purposes of the merchandise, and estimated duties were paid thereon.

Delivery permits covering the imported merchandise were issued to the importer of record, Universal Transcontinental Corp., and lodged on July 11 and 28, and November 19, and December 19, 1947, with the general order storekeepers of the warehouses where the merchandise was stored. It appears that, acting under the said delivery permits, the Government storekeepers released the said merchandise to the proprietors of the said warehouses, but that the merchandise itself was actually not moved from the places in the said warehouses where it had been previously stored.

Thereafter, the merchandise remained in such situation for approximately a year, and some time in December 1948, was sold to the protestant herein, Atlas Fibers Co., Inc., the seller specifically agreeing "to transfer to the buyer all rights as to the drawback of the duty paid on 221,111 lbs. approx." The purchaser then caused the merchandise to be transported by bonded truckmen to the exporting carriers and exported under customs supervision.

The entries involved had been liquidated on various dates from August 30, 1948, to January 6, 1949, and increased duties found due, which were paid. Under date of February 14, 1949, demand for a refund of the customs duties paid was made by the attorney for the plaintiff, acting in its behalf, and the same was refused by the collector under dates of February 21 and 23, 1949.

The present protest was thereupon filed on April 1, 1949, in which either directly or by timely amendment thereto the plaintiff claims that the duties paid should be refunded under the provisions of section 557 (a) and/or section 558 (a) (1) of the Tariff Act of 1930, as amended, on the ground that the merchandise was in the custody of the Government from the time of its importation to the time of its exportation, or, in the alternative, if the merchandise was released from the custody of the Government between the said times, the duties should be refunded under the exception to the statutory prohibition of refunds after release of merchandise contained in section 558 (a) (1), relating to exportation of articles with respect to which a drawback of duties is expressly provided for by law.

So far as here pertinent, the provisions of sections 557 and 558 of the Tariff Act of 1930, as amended by the Customs Administrative Act of 1938 (T. D. 49646; 52 Stat. 1077, 1087, 1088), read as follows:

SEC. 557. ENTRY FOR WAREHOUSE—WAREHOUSE PERIOD—DRAWBACK.

(a) Any merchandise subject to duty * * * may be entered for warehousing and be deposited in a bonded warehouse at the expense and risk of the owner, importer, or consignee. Such merchandise may be withdrawn, at any time within three years from the date of importation, for consumption upon payment of the duties and charges accruing thereon at the rate of duty imposed by law upon such merchandise at the date of withdrawal; or may be withdrawn for exportation or for transportation and exportation to a foreign country * * * without the payment of duties thereon * * *: *Provided*, That the total period of time for which such merchandise may remain in bonded warehouse shall not exceed three years from the date of importation. Merchandise upon which the duties have been paid and which shall have remained continuously in bonded warehouse or otherwise in the custody and under the control of customs officers, may be entered or withdrawn at any time within three years after the date of importation for exportation or for transportation and exportation to a foreign country * * * under such regulations as the Secretary of the Treasury shall prescribe, and upon such entry or withdrawal, and exportation or shipment, the duties thereon shall be refunded.

(b) The right to withdraw any merchandise entered in accordance with subsection (a) of this section for the purposes specified in such subsection may be transferred upon compliance with regulations prescribed by the Secretary of the Treasury. So long as any such transfer remains unrevoked the transferee shall have, with respect to the merchandise the subject of the transfer, all rights to file protests * * * which would otherwise be possessed by the transferor. * * *

SEC. 558. NO REMISSION OR REFUND AFTER RELEASE OF MERCHANDISE.

(a) No remission, abatement, refund, or drawback of estimated or liquidated duty shall be allowed because of the exportation or destruction of any merchandise after its release from the custody of the Government, except in the following cases:

(1) When articles are exported with respect to which a drawback of duties is expressly provided for by law;

\*         \*         \*         \*         \*         \*         \*

The issue of jurisdiction has been raised by the defendant, it being contended that the plaintiff herein, Atlas Fibers Co., Inc., "is an improper party plaintiff in view of the fact that they do not appear either as nominal or ultimate consignee of any of the entry names." This contention was not further developed in either the record or in the brief filed on behalf of the defendant, but is apparently made under the provisions of section 514 of the Tariff Act of 1930, wherein those who may file protests are named as:

* * * the importer, consignee, or agent of the person paying such charge or exaction, or filing such claim for drawback, or seeking such entry or delivery * * *.

From an examination of the protest and the amendment thereof, it appears that the plaintiff sets forth two bases upon which it is entitled to file the present protest. First, under section 557 (b) of the act as

transferee of merchandise entered in accordance with subsection (a) of that section, and, second, under section 514, *supra*, as a "person * * * filing such claim for drawback."

As has been stated, the basis for the contention of the defendant as to the capacity of Atlas Fibers Co., Inc., to file the present protest was not elaborated in either the record or the brief filed on behalf of the defendant. While it appears to us that there might be some question as to whether the instant merchandise was "entered in accordance with subsection (a)" of section 557, and consequently whether Atlas Fibers Co., Inc., as transferee, acquired rights of the transferor to file protest, nevertheless, there does not appear to be any question but that the Atlas Fibers Co., Inc., was entitled to file the protest in its own name under section 514, it being clear that the collector refused to allow its claim for drawback, which action gave rise to the present protest.

Parenthetically, it should be stated that although the statute would appear to place the authority to file a protest relating to drawback in the "agent of the person * * * filing such claim for drawback," it has been held, and properly so, that the statutory authority to file protests in such circumstances extends to the principal as well—

* * * for otherwise substance would be subordinated to mere language and the absurd result would be reached that an agent would be given power to file a protest for a principal who, not being empowered to file one himself, could have no authority to authorize an agent to do it. [*Patchogue-Plymouth Mills Corporation* v. *Durning,* 101 F. 2d 41, 43.]

Turning, therefore, to the merits of the case, the first question for determination is whether or not the merchandise involved remained "continuously * * * in the custody and under the control of customs officers" until withdrawal and exportation.

In the brief filed on behalf of plaintiff, it is recognized by plaintiff's counsel that there is case law which "holds that the lodging of a delivery permit with a warehouse storekeeper terminates customs custody," and cited as expressive of this doctrine are the cases of *Parfums Corday, Inc.* v. *United States,* 8 Cust. Ct. 161, C. D. 597, and *Mussman & Shafer, Inc.* v. *United States,* 27 Cust. Ct. 180, C. D. 1367, affirmed in *United States* v. *Mussman & Shafer, Inc.,* 40 C. C. P. A. (Customs) 108, C. A. D. 506. Examination of those cases reveals that the tenor of their holding is slightly different from that expressed by counsel for the plaintiff in that they do not require the lodging of the delivery permit with the warehouse storekeeper, but merely that it be unconditional in form and received by the importer or owner.

Plaintiff contends that the general rule of the foregoing cases has been given some flexibility by certain other decisions of the customs courts where, in fact, the merchandise has not entered the commerce of the United States, although a delivery permit has been lodged with

the customs officer charged with custody of the goods. Cases cited in support of this contention are *United States* v. *W. F. Mackay*, 34 C. C. P. A. (Customs) 127, C. A. D. 355; *Fenton Co. et al.* v. *United States*, 14 Ct. Cust. Appls. 277, T. D. 41885; *Mussman & Shafer, Inc.* v. *United States, supra*; and *Rena Hartman, Inc.* v. *United States*, 66 Treas. Dec. 129, T. D. 47200.

The *Mackay* and *Mussman & Shafer, Inc.*, cases, however, can hardly be considered to be exceptions to or examples of flexibility of the rule, for in each of those cases it appeared that the delivery permit was not unconditional but that something remained to be done by customs or other governmental officers other than to honor the permit. In the *Fenton* case, it appeared that the delivery permit was given to the customs officer in charge without there being any intent on the part of the importer to receive the goods or on the part of the customs officer to accept the permit. There was no intent to change either the custody or control of the merchandise, and it was held that no change was effected.

The *Hartman* case arose under the provisions of section 308 of the Tariff Act of 1930, involving importations temporarily free under bond for exportation, and the issue of continuous customs custody was not directly involved therein. It was held that under the provisions of said section 308 the merchandise had been at all times technically in the possession of the Government, even though actually located on the premises of the importer. As determination of the matter rested upon the precise facts and the law of section 308, which is not here involved, we do not deem the case to be any authority establishing an exception to or flexibility of the general rule cited.

However, we observe that the field of application of the general rule of the *Parfums Corday* and *Mussman & Shafer* cases and of the cases cited therein in support thereof has been the determination of the dutiable status of imported merchandise, that is to say, the determination of the time when imported merchandise has entered the commerce of the country so as to be chargeable with the duties applicable to such merchandise at that time. In such field, the reason for the development and application of the rule has been to fix with certainty the time when the rights and obligations of the United States, on the one hand, and the importer, on the other hand, become definite with respect to the payment of or exemption from duty on imported goods, i. e., to determine what rate or amount of duty, if any, is applicable to the goods. Here, there is no question of fixing the rate or amount of duties applicable to the goods; the question is, rather, the identification of goods upon which drawback is sought.

The distinction was recognized in the case of *Franklin Sugar Refining Company* v. *United States*, 202 U. S. 580, 50 L. ed. 1153. There, certain sugar was imported and entered for warehouse on September

29, 1903, and duty was paid at the rates prescribed by the Tariff Act of 1897, and permits issued to the importer. By December 17, 1903, all of the sugar had been removed from warehouse for consumption, except 4,596 bags, which were removed on December 28 and 29, 1903.

The treaty between the United States and Cuba providing for a reduction of 20 per centum on the rates of duty imposed by the Tariff Act of 1897 became effective and applicable to imported merchandise on December 27, 1903, and the importer claimed that it was entitled to the reduction of 20 per centum as to the sugar not actually removed from bonded warehouse until after December 27, 1903.

In holding that the sugar was subject to the duties in force on the date of the lodging of the delivery permits with the storekeeper, rather than the date of the actual physical removal of the goods from warehouse, the Supreme Court of the United States said:

> Between September 29 and October 10 withdrawal entries were made of the entire cargo and duties at regular rates paid thereon. The delivery permits were lodged with the storekeeper at the same time. This put the sugars at the absolute disposition of the importers. It may be that the government had the custody of them, or rather the joint custody with the importer. Rev. Stat. § 2960, U. S. Comp. Stat. 1901, p. 1945. But it was a mere manual custody, not claiming any right over them or right to detain them. Indeed, it may be said that the payment of duties and the delivery of the permit to the storekeeper operated to give up the custody which the government had jointly with the importer before the payment of duties.

Up to this point, it would seem that the language used by the Supreme Court would be dispositive of the contentions here made by the plaintiff. However, it will be seen that in the sentences immediately following the Supreme Court recognized the distinction between a determination of the dutiable status of merchandise and the determination of the continuity of customs custody for the purposes of identification of merchandise the subject of drawback. The Court went on to say:

> * * * It is, however, pointed out by appellant that, by § 2977 Rev. Stat. (U. S. Comp. Stat. 1901, p. 1952), merchandise upon which duty has been paid may remain in the warehouse, "in custody of the officers of the customs, at the expense and risk of the owners of such merchandise, and, if exported directly from such custody to a foreign country, within three years, shall be entitled to return duties." Whether this section covers a case where a permit has been issued it is not necessary to decide. *It is enough to say that the section is part of the plan for the payment of drawbacks. The merchandise is identified by remaining in the warehouse.* Rev. Stat. § 2978, U. S. Comp. Stat. 1901, p. 1952. [Italics added.]

Consequently, the rule announced by the Supreme Court in the next following sentence should be accepted as relating only to questions concerning the dutiable status of imported merchandise:

> * * * We think, therefore, that where duties are paid upon merchandise and permits issued for its removal which have been delivered to the storekeeper, it is withdrawn for consumption, and is subject to duties as of that time.

Section 2977 of the Revised Statutes, it should be noted, was a predecessor of section 557 of the present act. See historical note following section 1557, title 19, U. S. C. A.

Two cases have been decided by this court on facts which are basically the same as those here involved. The first is *Belgam Corp. et al.* v. *United States*, 67 Treas. Dec. 45, T. D. 47462, wherein it appeared that as to certain of the merchandise involved entry was not made within 48 hours after arrival and it, therefore, was sent to warehouse under a general order. Subsequently, a consumption entry was prepared and presented to the customs officials, and estimated duties paid. A consumption permit was issued to and received by the importer which was lodged with the storekeeper in the warehouse, and the merchandise was transferred from the custody of the Government storekeeper to the warehouse proprietor. The merchandise was subsequently exported, and claim for refund was made on the ground that the merchandise had been in continuous customs custody from the time of its importation until the time of exportation.

Under authority of the *Franklin Sugar Refining Company* case, *supra*, it was held that the goods had not been in continuous customs custody, and relief was denied.

In the case of *Hudson Shipping Co., Inc.* v. *United States*, 18 Cust. Ct. 17, C. D. 1038, certain empty bags were imported from Mexico and entered for warehouse. Delivery permits were issued and lodged with the storekeeper, but the bags were not removed from warehouse but were used to repackage a shipment of beans. The bagged beans were thereafter withdrawn under a warehouse withdrawal for transportation and exportation and exported under customs supervision.

The claim was made that as the bags had not actually been removed from warehouse they remained in continuous customs custody until exported, and that refund of the duties should be made under section 557. Holding that the lodging of the delivery permits with the Government storekeeper at the warehouse after the payment of the duties operated as a release from customs custody, this court overruled the claim, citing the *Franklin Sugar Refining Company* case, *supra*, as well as other cases, as authority.

As we have pointed out, the Supreme Court, in the *Franklin Sugar Refining Company* case, seemingly expressly excluded from its decision the question of the effect of the lodging of a delivery permit in connection with merchandise on which drawback is claimed because of exportation from continuous customs custody, so that that case would not appear to be authority on such an issue.

However, we are impelled to follow the holdings in the *Belgam* and *Hudson Shipping Co., Inc.*, cases, but for different reasons, as follows:

As we view the fact situation presented in this case, and the law applicable thereto, we need not here decide whether the manual custody which the Government storekeeper may have had of the merchandise—if, indeed, it may be said that after the lodging of the delivery permits he retained even that form of custody—was sufficient to preserve the identity of the merchandise so that it could become the subject of drawback. The statute requires that the merchandise remain not only "in the custody" of customs officers, but that it also remain "under the control" of such officers.

Certainly the term "under the control" implies the right to exercise such dominion over the merchandise as would exclude or impair that right in others, including the owner. It seems to us that under the facts and circumstances of this case the Government storekeeper retained no control of the merchandise. After its release to the warehouse proprietors, it would appear that the latter and the owner had control, even assuming that the merchandise was still in the technical custody of the Government storekeeper by reason of not having been removed from the portion of the warehouse where it had been in his custody.

We are constrained to hold, therefore, that the claim for refund under the provisions of section 557 (a) of the Tariff Act of 1930 on the ground that the merchandise had remained in continuous customs custody and control must be overruled.

This leaves for consideration only the plaintiff's claim that a drawback of duties is expressly provided for in section 557 (a) upon articles exported under the circumstances which obtained herein, and that by reason of the exception specified in section 558 (a) (1) said drawback may be allowed even though the merchandise had been released from the custody of the Government.

As has been noted, the Supreme Court denominated the provision in R. S. § 2977, a predecessor of section 557, as a "plan for the payment of drawbacks," and section 557 (a) carries in its title the word "Drawback," although the word is not used in the body of the section. "Drawback is repayment of moneys previously paid in by the exporters upon goods previously imported"—*Nicholas & Co. et al.* v. *United States*, 7 Ct. Cust. Appls. 97, 110, T. D. 36426. In a general sense, therefore, it would appear that the provision in section 557 (a) for the refund of duties upon the exportation of merchandise which has remained continuously in bonded warehouse or otherwise in the custody and under the control of customs officers is a provision for drawback of duties.

But the statutory exception provided in section 558 (a) (1) applies only in the case where drawback of duties is "expressly provided for by law." By the use of the word "expressly," we think that Congress intended to limit the application of the exception granted in section

558 (a) (1) to those provisions for the refund of duties previously paid which declare in direct terms that the refunds are to be known and treated as drawback, for example, the provisions of section 313 of the Tariff Act of 1930 wherein such refunds are specifically denominated as drawback.

Webster's New International Dictionary, 2d edition, 1945, defines the adverb "expressly" as—

In an express manner; in direct or unmistakable terms; explicitly; definitely; directly.

and this is the meaning the word has in law. Cf. Words & Phrases Permanent Edition, Vol. 15A, pp. 550, *et seq.*, and Black's Law Dictionary, 3d edition, pp. 726, *et seq.*, under the adjective form, "express."

That Congress could not have intended the exception provided for in section 558 (a) (1) to be applicable with respect to the provisions for refund upon exportation from continuous customs custody and control in section 557 (a) we think is also made clear when the two provisions are read together. The essence of the provision in section 557 (a) is continuous custody and control by the customs officers. If such provision were made subject to the exception provided in section 558 (a) (1), the very basis for the allowance of drawback would be taken away and the provision would be, in effect, canceled and meaningless.

Certainly, the provisions of section 557 (a) and those of section 558 (a) (1) must be read together, and when so read Congress could hardly be understood to have provided in one section of the tariff act as a condition precedent to the allowance of refund or drawback that merchandise remain in continuous customs custody and control, and in a succeeding provision that the refund or drawback be allowable even though the condition be broken.

Upon the law applicable to the facts of this case, we are unable to sustain any of the claims made by the plaintiff. Judgment will therefore issue overruling the protest accordingly.