See also *Henry Hollander Co.* v. *United States*, 22 C. C. P. A. (Customs) 645, T. D. 47632.

In the case at bar, the original shipment of lenses and lens parts constituted an importation into the United States. Their subsequent shipment to the Western Zone of Germany was an "exportation" from this country and, upon reimportation in their repaired condition, these lenses and lens parts were "articles the growth, produce, or manufacture of" a nation or area which is entitled to the benefits of the reduced rate of duty under paragraph 228 (b) of the Tariff Act of 1930, as modified. As such, duty on the cost of the repairs is properly assessable at the reduced rate of 25 per centum ad valorem, as claimed. The protest is sustained. Judgment will be rendered accordingly.

(C. D. 1673)

J. Einstein, Inc. *v.* United States

United States Customs Court, First Division

(Decided January 27, 1955)

*Sharretts, Paley & Carter* (*Amos B. Sharretts* of counsel) for the plaintiff.
*Warren E. Burger*, Assistant Attorney General (*Alfred A. Taylor, Jr.*, trial attorney), for the defendant.

Before OLIVER, MOLLISON, and WILSON, Judges

MOLLISON, Judge: This protest is directed against the refusal of the collector of customs at the port of New York to allow drawback under the provisions of section 313 (c) of the Tariff Act of 1930, as in force and effect at the times here pertinent, upon the exportation from the United States, as not conforming to sample or specifications, of merchandise which had been previously imported and upon which duties had been paid.

The protest has been submitted for decision upon a stipulation of counsel reading, so far as pertinent, as follows:

1. That on March 2, 1951 the plaintiff imported on the S. S. ESCALIBUR at the port of New York, five (5) cases of glazed kid leather numbered 28–32, inclusive, and covered by consumption Entry No. 839764 of the same date;

2. That the aforesaid five (5) cases of merchandise were entered at the port of New York on March 2, 1951 under consumption Entry No. 839764 and covered by "Immediate Delivery and Consumption Entry Bond (Single Entry)", No. 1,786,000 dated March 2, 1951, Customs Form No. 7551;

3. That the merchandise subject of this protest was contained in four (4) cases in the above stated shipment numbered 29–32, inclusive;

4. That on March 5, 1951 the merchandise contained in the four (4) cases Nos. 29–32, inclusive, was released to the importer;

5. That the merchandise contained in Case No. 28 was sent from the wharf to the Appraiser's Stores for examination and was thereafter examined on March 7, 1951 and released to the importer on the same day;

6. That application No. 9121 dated April 2, 1951 was made on Customs Form 7537, covering all five (5) cases (No. 28–32, inclusive) by the importer for exportation of merchandise not conforming to sample or specification;

7. That on April 5, 1951 the importer returned all of the merchandise contained in the aforesaid five (5) cases No. 28–32, inclusive, to Customs Custody for exportation;

8. That all of the instant merchandise in the five (5) cases was actually exported under customs supervision on the S. S. BLACK HAWK, on or about May 26, 1951, and did not, in fact, conform to samples or specifications;

9. That drawback entry No. 7390 dated May 22, 1951 was filed with the Collector of Customs at New York pertaining to the instant merchandise;

10. That on liquidation of drawback entry No. 7390, drawback was allowed as to the merchandise contained in Case No. 28;

11. That on liquidation of drawback entry No. 7390, drawback was not allowed as to the merchandise contained in the four (4) cases Nos. 29–32, inclusive;

\*        \*        \*        \*        \*        \*        \*

As it was in force and effect at the time of exportation of the merchandise here involved, section 313 (c), *supra*, read as follows:

SEC. 313. DRAWBACK AND REFUNDS.

\*        \*        \*        \*        \*        \*        \*

(c) MERCHANDISE NOT CONFORMING TO SAMPLE OR SPECIFICATIONS.—Upon the exportation of merchandise not conforming to sample or specifications upon which the duties have been paid and which have been entered or withdrawn for consumption and, within thirty days after release from customs custody, returned to customs custody for exportation, the full amount of the duties paid upon such merchandise shall be refunded as drawback, less 1 per centum of such duties.

It appears that drawback was disallowed on the four cases of merchandise Nos. 29–32, inclusive, for the reason that more than 30 days had elapsed between March 5, 1951, when the merchandise was released to the importer, and April 5, 1951, when the merchandise was returned to customs custody.

It is the position of the plaintiff that by reason of the fact that the "Immediate Delivery and Consumption Entry Bond (Single Entry)" on customs Form No. 7551, under which the merchandise was entered, contained a redelivery clause, the merchandise was not unconditionally released on March 5, 1951, but that the said release became unconditional on and after March 7, 1951, when case No. 28 was examined and released, and, presumably, the appraiser's report of appraisement made. Under this theory, less than 30 days elapsed from the time of unconditional release of the merchandise until its return to customs custody.

In the brief filed on behalf of the plaintiff, the argument is developed as follows:

When the importer obtained physical possession of the instant four cases of merchandise on March 5, 1951 and until March 7, 1951 (when case No..28 was examined and released to the importer), the customs officials still had official acts to perform with regard to the merchandise in order to determine its dutiable status, and, in fact, to determine whether or not it could enter into the commerce of the country. During those two days, the collector had the right to demand the return of the merchandise delivered to the importer under the terms of the single entry bond covering all five cases of the merchandise.

34

From the foregoing, it is clear that, under the theory of counsel for the plaintiff, *unconditional* release of the merchandise from customs custody is a condition precedent to the running of the 30 days specified in section 313 (c), *supra*, within which imported duty-paid merchandise might be out of customs custody and still be returned for exportation with benefit of drawback. The statute, however, did not expressly nor, in our opinion, impliedly make such a requirement. The purpose of the statute obviously was to give the importer of merchandise 30 days within which to determine whether such merchandise conformed to the sample or specification upon which it was ordered. That purpose is satisfied by the release to the importer of the merchandise, whether or not the customs officers may retain the right to demand its return for examination or inspection in connection with appraisement. During the period from March 5 to March 7, when the return of the merchandise might have been demanded, custody of the merchandise was in the importer, who had the right during that period, if it so desired, to inspect the merchandise for the purpose of determining whether it conformed to sample or specification.

In the brief filed on behalf of the plaintiff, its counsel has cited *United States* v. *Cronkhite Co.*, 9 Ct. Cust. Appls. 129, T. D. 37980; *Ainslee Knitting Machine Co., Inc.* v. *United States*, 69 Treas. Dec. 954, T. D. 48339; and *Parfums Corday, Inc.* v. *United States*, 8 Cust. Ct. 161, C. D. 597. Those cases related to the question of when importation takes place for the purpose of determining the dutiable status of merchandise. The principles there laid down and followed have no application to the issue in the present case, except insofar as it is pointed out in the *Ainslee Knitting Machine Co., Inc.*, case, *supra*, that a distinction exists between customs custody and customs control. This distinction was further discussed in the recent case of *Atlas Fibers Co., Inc.* v. *United States*, 30 Cust. Ct. 247, C. D. 1528, affirmed in *Same* v. *Same*, 42 C. C. P. A. (Customs) 65, C. A. D. 572.

Following the principles of those cases, it appears that the merchandise here involved was actually released from customs *custody* on March 5, 1951, but was still in part, at least, under customs *control* until the appraisement report was lodged with the collector, presumably on March 7, 1951. The time limitation expressed in section 313 (c), *supra*, began to run upon release from customs *custody*, and not upon release from customs custody *and control*.

Counsel for the plaintiff has also cited the case of *A. De Cardi, Inc.* v. *United States*, 22 Cust. Ct. 147, C. D. 1173, as involving a situation analogous to that in the present case. It was clearly held in that case, however, that no release of the merchandise from customs custody was ever intended or effectuated by either the customs

officers or the importer. We, therefore, do not consider it as authority bearing upon the issue herein.

We are satisfied that upon the facts and the law in this case judgment must issue in favor of the defendant.